**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMSC-050**

**Filing Date: October 18, 2010**

**Docket No. 32,220**

**PROGRESSIVE NORTHWESTERN**
**INSURANCE COMPANY**,

      **Plaintiff-Appellee,**

**v.**

**WEED WARRIOR SERVICES and**
**BRENDA ETCHEVERRY**,

      **Defendants-Appellants.**

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE**
**TENTH CIRCUIT**
**Robert H. Henry, Deanell Reece Tacha, and Harris Hartz, Circuit Judges**

George Wright Weeth
Albuquerque, NM

for Appellants

Simone, Roberts & Weiss, P.A.
Meena H. Allen
Albuquerque, NM

for Appellee

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Lisa Mann
Jennifer Noya
Albuquerque, NM

for Amici Curiae American Insurance Association and
Property Casualty Insurers Association of America

**OPINION**

**SERNA, Justice.**

**{1}**     In this case we consider the duty imposed on insurers to offer uninsured/underinsured motorist (UM/UIM) coverage under NMSA 1978, Section 66-5-301 (1983).  We answer in the affirmative the question, certified to us by the United States Court of Appeals for the Tenth Circuit, of whether the election by an insured to purchase UM/UIM coverage in an amount less than the policy liability limits constitutes a rejection of the maximum amount of UM/UIM coverage permitted under Section 66-5-301.  This Opinion responds to the certified question only; application is discussed in the consolidated cases of *Jordan v. Allstate Insurance Co.,* No. 32,063, *Romero v. Progressive Northwestern Insurance Co.*, No. 32,065, and *Lucero v. Trujillo*, No. 32,203, filed this same day.  *See Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, __ N.M. __, __ P.3d __ (No. 32,063, Oct. 18, 2010).

**FACTUAL AND PROCEDURAL BACKGROUND**

**{2}**     Brenda Etcheverry was injured in a car accident and settled her claim against the tortfeasor for his policy limits of $100,000.  *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 588 F. Supp. 2d 1281, 1282 (D.N.M. 2008).  Mrs. Etcheverry filed a claim with Progressive Northwestern Insurance Company (Progressive), with whom her husband's company, Weed Warrior Services, insured their vehicles.  *Id.*  The Progressive policy included liability limits of $1,000,000 and UM/UIM coverage of $100,000 for each accident.  *Id.*  The United States District Court for the District of New Mexico entered a declaratory judgment in favor of Progressive, because the amount of UM/UIM coverage available under the Progressive policy was offset by the settlement with the tortfeasor.  *Id.*  Mrs. Etcheverry was permitted to amend her complaint and argued that the Progressive policy should be reformed to provide UM/UIM coverage equal to the liability limits of $1,000,000, rather than $100,000, because the purchase of UM/UIM coverage at an amount lower than the liability limits was not evidenced with a written rejection.  *Id.* at 1282, 1284.

**{3}**     The district court predicted that this Court would interpret New Mexico law to provide that "the affirmative selection of a level of UM/UIM coverage in an amount less than full liability coverage [does not] constitute[] a 'rejection' of coverage such that an insurer must obtain a written waiver of coverage and include it in the policy."  *Id.* at 1288.  Mrs. Etcheverry and Weed Warrior Services appealed the district court's ruling to the Tenth Circuit Court of Appeals, which certified the following question pursuant to Rule 12-607 NMRA and NMSA 1978, Section 39-7-4 (1997):

> Does the election to take UM/UIM coverage for less than the general policy
> liability limits constitute a rejection under the New Mexico uninsured
> motorist statute, [Section] 66-5-301[]?

**{4}**     Although an issue of first impression for this Court, it is not the first time the question has arisen in the federal or state courts of New Mexico.  Our Court of Appeals

considered the offer and rejection requirements of UM/UIM coverage in *Romero v. Progressive Northwestern Insurance Co.*, 2010-NMCA-024, 148 N.M. 97, 230 P.3d 844, *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055, *and reh'g granted*, 2010-NMCERT-003, ___ N.M. ___, ___ P.3d ___ (No. 32,065, Mar. 1, 2010). *See also Farmers Ins. Co. of Ariz. v. Chen*, 2010-NMCA-031, 148 N.M. 151, 231 P.3d 607, *cert. granted*, 2010-NMCERT-004, ___ N.M. ___, ___ P.3d ___ (No. 32,243, Apr. 1, 2010)[1]; *Lucero v. Trujillo*, No. 29,859, slip op. (N.M. Ct. App. Jan. 7, 2010), *cert. granted*, 2010-NMCERT-003, ___ N.M. ___, ___ P.3d ___ (No. 32,203, Mar. 1, 2010); *Jordan v. Allstate Ins. Co.*, No. 28,638, slip op. (N.M. Ct. App. Oct. 29, 2009), *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055, *and reh'g granted*, 2010-NMCERT-003, ___ N.M. ___, ___ P.3d ___ (No. 32,063, Mar. 1, 2010). The question also was addressed by a federal district court in *Farm Bureau Mutual Insurance Co. v. Jameson*, 472 F. Supp. 2d 1272 (D.N.M. 2006). With the exception of the district court in Mrs. Etcheverry's case, the courts determined that the purchase of UM/UIM coverage in an amount less than the policy's liability limits constitutes a rejection of the maximum amount of UM/UIM coverage statutorily available. *Farm Bureau Mut.*, 472 F. Supp. 2d at 1280-81; *Romero*, 2010-NMCA-024, ¶ 24. We agree with that conclusion.

**ANALYSIS**

**{5}** Section 66-5-301 of the New Mexico statutes governs uninsured and underinsured motorist coverage. The UM/UIM statute is "intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990). Subsection A of Section 66-5-301 mandates uninsured motorist coverage:

> No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others . . . shall be delivered or issued for delivery in New Mexico . . . *unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property . . . and such higher limits as may be desired by the insured, but up to the limits of liability* specified in bodily injury and property damage liability provisions of the insured's policy, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . .

(Emphasis added.) The minimum limits are defined in the Mandatory Financial Responsibility Act as $25,000 per person, $50,000 per accident, and $10,000 for property

---

[1]*Chen* was held in abeyance pending the outcome of this case and *Jordan*, 2010-NMSC-051.

3

damage. NMSA 1978, § 66-5-215(A)(2)-(3) (1983). Underinsured motorist coverage is addressed in Subsection B of Section 66-5-301:

> The uninsured motorist coverage described in Subsection A . . . shall include underinsured motorist coverage for persons protected by an insured's policy. . . . "[U]nderinsured motorist" means an operator of a motor vehicle . . . which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.

The ability of the insured to reject UM/UIM coverage is set forth in Subsection C: "The named insured shall have the right to reject uninsured motorist coverage as described in Subsections A and B . . . ."

**{6}** Our analysis of whether the election to purchase UM/UIM coverage in an amount less than the policy liability limits is a rejection under our insurance laws requires us to construe our UM/UIM statute, a task we undertake de novo. *See Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 13, 147 N.M. 678, 228 P.3d 462.

> When deciding a statute's meaning, our goal is to determine and give effect to legislative intent. We do not depart from the plain language of a statute unless we must resolve an ambiguity, correct a mistake or absurdity, or deal with a conflict between different statutory provisions. . . . [I]n light of the purpose of New Mexico's UM/UIM statute to expand coverage to protect members of the public against uninsured motorists, the statute is interpreted liberally to implement that remedial purpose, and any exception will be strictly construed.

*Id.* ¶ 14 (internal quotation marks, citations, brackets and ellipsis omitted).

**{7}** This Court in *Marckstadt* interpreted Section 66-5-301 to determine how a valid rejection of UM/UIM coverage is made. We stated that "the insurer may not exclude UM/UIM coverage from an automobile liability policy unless it has offered it to the insured and the insured has exercised the right to reject the coverage through some positive act." *Marckstadt*, 2010-NMSC-001, ¶ 15 (internal citation omitted). We discussed the importance of offering UM/UIM coverage to the realization of the statute's purpose: "[I]n order for the offer and rejection requirements of Section 66-5-301 to effectuate the policy of expanding UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly and intelligently act* to reject it before it can be excluded from a policy." *Id.* ¶ 16.

**{8}** Our task is to determine whether the statute imposes the offer and rejection requirements on all levels of UM/UIM coverage: Must insurers "meaningfully offer" the maximum amount of UM/UIM coverage permitted by the statute, e.g., the liability limits of

4

the policy, or does our statute merely require insurers to offer the minimum amount, e.g., $25,000 per person per accident? The only New Mexico case to affirmatively define Section 66-5-301 in terms of its offer requirements is *Pielhau v. RLI Insurance Co.*, 2008-NMCA-099, 144 N.M. 554, 189 P.3d 687. In *Pielhau*, the Court of Appeals construed the UM/UIM statute in the process of holding that an insurer had no duty to offer UM/UIM coverage as part of an umbrella policy. *Id.* ¶ 19. *Pielhau* stated that New Mexico's UM/UIM statute is a "minimum liability" statute because "[UM/UIM] coverage is statutorily required only to the minimum amounts set by the legislature. Accordingly, the policy purpose of the statute is met when the insured's underlying automobile coverage provides minimum UM/UIM coverage." *Id.* ¶ 12 (internal quotation marks and citation omitted).

**{9}** In reaching this conclusion, *Pielhau* relied on *Archunde v. International Surplus Lines Insurance Co.*, 120 N.M. 724, 905 P.2d 1128 (Ct. App. 1995). In *Archunde*, the Court of Appeals held that Section 66-5-301(A) applied only to automobile insurance policies, and "in an excess policy, there is no statutory requirement mandating the inclusion of such coverage." *Id.* at 726, 905 P.2d at 1130. *Pielhau*'s conclusion, that an umbrella policy need not include UM/UIM coverage, was supported by *Archunde*, and we do not disturb that holding today. Pursuant to the discussion that follows, however, to the extent that *Pielhau* may be read as holding that our UM/UIM statute directs insurers to offer only the minimum amount of UM/UIM coverage, it is overruled.

**{10}** The requirement that insurers offer UM/UIM coverage in an amount greater than the minimum is apparent from the language of Section 66-5-301. In the Mandatory Financial Responsibility Act, the Legislature determined that $25,000 insurance coverage for injury or death per accident is an adequate amount of coverage. *See* § 66-5-215(A)(1). Section 66-5-301(A) requires that same amount of coverage for UM coverage. Read together, an uninsured motorist is one who does not carry the statutory minimum for liability coverage, or $25,000, and injury caused by such a driver would be covered by the injured individual's UM coverage. Section 66-5-301(B) defines UIM coverage as part of UM coverage. If the tortfeasor carried the statutory minimum of liability insurance and the injured driver carried the statutory minimum of UM/UIM coverage, the injured driver would have no recourse for injuries suffered over the minimum amount of $25,000. The injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of "UIM" in the statute superfluous. *See State ex rel. ENMU Regents v. Baca*, 2008-NMSC-047, ¶ 10, 144 N.M. 530, 189 P.3d 663 (per curiam) ("[W]e refrain from reading statutes in a way that renders provisions superfluous."). An insured carries UIM coverage only if the UM/UIM limits on her or his policy are greater than the statutory minimum of $25,000.

**{11}** In interpreting statutes, we presume that the Legislature intends the application of the words it uses. *See State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. With Section 66-5-301, the Legislature intended to expand UM/UIM coverage, a goal accomplished through the meaningful offer of UM/UIM coverage to insureds. *Marckstadt*, 2010-NMSC-001, ¶ 16. As in our example above, the inclusion of UIM coverage in Section

66-5-301 would be meaningless if insurers were not required to offer UM/UIM coverage in an amount more than the statutory minimum, which presumes a certain amount of coverage by the tortfeasor. Subsection C explicitly permits the rejection of UIM coverage; this cannot be done if only the minimum limits of UM coverage are offered by the insurer.

**{12}** The policy behind our UM/UIM statute is consistent with the requirement that the insurer offer the maximum amount of UM/UIM coverage to the insured. The requirement that UM/UIM coverage be offered by insurers is "to encourage insureds to purchase such coverage." *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶ 16, 135 N.M. 681, 92 P.3d 1255. In *Montano* we discussed the importance of insureds being able to choose the amount of stacking to carry in their auto insurance policies; we stated that mandatory stacking, and thus increased premiums, "could result in some lower-income insureds who own multiple vehicles being effectively 'priced out' of UM[/UIM] coverage." *Id.* "The legislature intended that an injured person be compensated to the extent of liability coverage purchased for his or her benefit." *Found. Reserve Ins. Co. v. Marin*, 109 N.M. 533, 535, 787 P.2d 452, 454 (1990). From these cases we draw the conclusion that the Legislature intended for drivers to have the option of carrying UM/UIM coverage equal to their policy limits, but that lower levels of UM/UIM coverage are preferred to none at all for those who affirmatively choose not to carry equal levels of coverage.

**{13}** We reject outright any suggestion that Section 66-5-301 places a burden on the insured to request UM/UIM coverage. *See Montano*, 2004-NMSC-020, ¶ 16 (stating that 66-5-301 "requir[es] insurers to offer UM[/UIM] coverage"). The "right to reject" UM/UIM coverage in amounts equal to liability limits, *Marckstadt*, 2010-NMSC-001, ¶ 15, cannot be meaningfully exercised without an offer of those amounts. The courts of New Mexico assume the average purchaser of automobile insurance "will have limited knowledge of insurance law," and we will not impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of UM/UIM coverage desired or required without first receiving information from the insurance company. *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002-NMCA-054, ¶ 7, 132 N.M. 264, 46 P.3d 1264.

**{14}** Recalling that Section 66-5-301 is a remedial statute that must be construed liberally, we hold that the offer of UM/UIM coverage must include the maximum amount statutorily available in order to effectuate the policy of the Legislature. As Section 66-5-301 requires insurers to offer UM/UIM coverage up to the liability limits of the policy, it follows that the choice by the insured to purchase any lower amount is a rejection. Adding to what we stated in *Marckstadt*, we hold that the insurer may not exclude the maximum possible level of UM/UIM coverage in an auto liability policy "unless it has offered it to the insured and the insured has exercised the right to reject the coverage through some positive act." 2010-NMSC-001, ¶ 15 (internal citation omitted).

**CONCLUSION**

**{15}** We conclude that Section 66-5-301 requires an insurer to offer UM/UIM coverage

in an amount equal to the liability limits of the policy and that the choice of the insured to purchase any lower amount functions as a rejection of that maximum amount of coverage statutorily possible.  Accordingly, we answer the certified question from the Tenth Circuit Court of Appeals in the affirmative.

**{16}     IT IS SO ORDERED**.


_____
                                   **PATRICIO M. SERNA, Justice**


**WE CONCUR:**


_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _Progressive Nw. Ins. Co. v. Weed Warrior Servs._, Docket No. 32,220**

| **IN** | **INSURANCE** |
| --- | --- |
| IN-CV | Coverage |
| IN-MV | Motor Vehicle Insurance |
| IN-UM | Uninsured or Underinsured Motorist |

| **ST** | **STATUTES** |
| --- | --- |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |