# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMSC-001

Filing Date: October 4, 2021

No. S-1-SC-37478

GREGORY CRUTCHER, individually
and on behalf of other similarly situated individuals,

     Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY PERSONAL INSURANCE COMPANY,
FIRST NATIONAL INSURANCE COMPANY OF
AMERICA, SAFECO INSURANCE COMPANY
OF AMERICA, and SAFECO NATIONAL INSURANCE
COMPANY,

     Defendants.

**ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT COURT OF NEW MEXICO**
**Judith C. Herrera, District Judge**

Released for Publication January 18, 2022.

Law Office of Kedar Bhasker
Kedar Bhasker
Albuquerque, NM

Corbin Hildebrandt, P.C.
Corbin P. Hildebrandt
Albuquerque, NM

Law Offices of Geoffrey R. Romero
Geoffrey R. Romero
Albuquerque, NM

Freedman Boyd Hollander Goldberg
Urias & Ward, P.A.
David Alan Freedman
Albuquerque, NM

for Plaintiff

Allen Law Firm, P.C.
Meena H. Allen
Albuquerque, NM

Baker & Hostetler LLP
Rodger L. Eckelberry
Columbus, OH

for Defendants

Allen, Shepherd, Lewis & Syra, P.A.
Brant L. Lillywhite
Albuquerque, NM

for Amici Curiae American Property and
Casualty Insurance Association and National
Association of Mutual Insurance Companies

**OPINION**

**THOMSON, Justice.**

## I.    INTRODUCTION

**{1}**     This case comes to us on certification from the United States District Court for the District of New Mexico. It requires us to determine whether the underinsured motorist (UIM) coverage on a policy that provides minimum uninsured/underinsured motorist (UM/UIM) limits of $25,000 per person/$50,000 per accident is illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor. If so, then we must decide whether insurance companies may charge premiums for such a policy. While the allegations contained within the Class Action Complaint are broader, this opinion addresses only the certified question.

**{2}**     We conclude that this type of policy is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit. We therefore hold that an insurer must adequately disclose the limitations of minimum UM/UIM coverage—namely, that under the policies described in this case, a policyholder may never receive underinsurance motorist coverage. Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage.

## II.    BACKGROUND

**{3}**     In 2006, Defendant First National Insurance Company of America ("First National") issued a minimum limits automobile insurance policy to Gregory Crutcher. The policy provided Mr. Crutcher with the statutory minimum of both liability insurance

and uninsured/underinsured motorist insurance, or coverage up to $25,000 per person and $50,000 per occurrence.

**{4}** In 2008, the policy was transferred from First National to Defendant Safeco Insurance Company of America ("Safeco"). Every month for twelve years (2006-2018), Mr. Crutcher paid two premiums towards his auto insurance policy: one for liability insurance and one for UM/UIM insurance. Safeco renewed Mr. Crutcher's policy annually through 2018.

**{5}** Uninsured motorist (UM) insurance coverage protects drivers who are damaged by a tortfeasor who does not have automobile insurance. *See* NMSA 1978, § 66-5-301(A) (1983). UIM insurance coverage protects drivers who are hit by a tortfeasor who does not have enough auto insurance to cover the cost of the driver's injuries and damages. *See* § 66-5-301(B). Pursuant to the statute, a policyholder is underinsured when there is a difference between the injured driver's uninsured/underinsured motorist insurance and the tortfeasor's liability insurance. *See id.* Although seemingly straightforward, these statutory provisions are more complicated than they appear.

**{6}** New Mexico law requires every driver to carry auto liability insurance of at least $25,000 per person and $50,000 per occurrence and UM/UIM insurance coverage of at least the same amount. *See* NMSA 1978, § 66-5-215(A)(1)-(2) (1983); § 66-5-301(A). This is described as a "minimum limits" policy because it is the absolute minimum amount of insurance that a driver is legally required to carry. *See Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 8, 149 N.M. 157, 245 P.3d 1209. A driver pays one premium for UM and UIM coverage.

**{7}** In 2017, Mr. Crutcher was involved in a car accident when another driver (tortfeaser) failed to stop at a traffic signal and crashed into his car. As a result of the collision, Mr. Crutcher sustained injuries, including a broken collarbone. Like Mr. Crutcher, the tortfeasor had purchased only a minimum limits automobile insurance policy. That is, he carried auto liability insurance of $25,000 per person and $50,000 per occurrence. Damages resulting from Mr. Crutcher's injuries exceeded $50,000.

**{8}** Following the accident, Mr. Crutcher filed a claim with the tortfeasor's insurance company (USAA). In response to his claim, USAA paid Mr. Crutcher $25,000, or the full amount of the tortfeasor's liability policy which covered some of the expenses incurred by the accident. After receiving the $25,000 liability coverage limit from the tortfeasor's insurance company, Mr. Crutcher filed a claim with his own insurance company, assuming he would receive at least $25,000 through his uninsured/underinsured motorist benefits to recover the balance of his damages. However, Safeco denied the claim, giving rise to this dispute.

**{9}** Mr. Crutcher and Safeco present alternate reasoning for the denial of the claim. In denying his claim, Mr. Crutcher inferred that Safeco applied the offset rule we announced in *Schmick v. State Farm Mutual Automobile Insurance Co.,* 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092. As we will explain in more detail, the *Schmick* offset rule allows an accident victim's insurance company to subtract whatever the driver

receives from the tortfeasor's insurance company from the payment due to its own policyholder. *Id.* ¶ 24. Mr. Crutcher reasoned that Safeco applied *Schmick* and deducted what he received from USAA ($25,000) from what he was eligible to receive through his Safeco policy's UM/UIM coverage ($25,000), and the resulting benefit was zero.

**{10}** Although Safeco agreed that the application of the *Schmick* offset rule would have resulted in no UIM payment, its denial of Mr. Crutcher's claim was not based on this rule. Rather, Safeco concluded that the tortfeasor did not meet the definition of an uninsured motorist pursuant to the statute because the total limits of liability insurance were equal to Mr. Crutcher's UM/UIM coverage limits. *See* § 66-5-301(B). Regardless of the reason for Safeco's denial of Mr. Crutcher's claim, we must determine whether it may charge a premium for a policy that cannot be fulfilled.

**{11}** Following Safeco's denial of his claim, Mr. Crutcher filed a class action lawsuit in the Second Judicial District Court against Safeco, Liberty Mutual Insurance Company, Liberty Personal Insurance Company, and Safeco National Insurance Company. Mr. Crutcher sought class certification for insured persons who find themselves with no UIM coverage, despite having paid regular premiums for it. On behalf of the class of plaintiffs, Mr. Crutcher alleged that Defendants failed to meaningfully explain to their policyholders how the *Schmick* offset rule works to cancel out UIM benefits that policyholders like Mr. Crutcher expected to receive. Mr. Crutcher alleged that the UIM coverage sold by Defendants to class members was "illusory" because UIM premiums sold on minimum limits policies are valueless if the policyholder is in an accident with a tortfeasor who carries liability coverage equal to the policyholder's UM/UIM coverage.

**{12}** Mr. Crutcher and the class members alleged seven violations under New Mexico common law and consumer protection statutes. Defendants removed the action to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d) (2018). Plaintiff and Defendants then cross-moved the United States District Court for the District of New Mexico to certify a controlling question of law to the New Mexico Supreme Court. The federal district court granted the motions and submitted a certification order to this Court on the issue of whether underinsured motorist coverage at the minimum level is illusory, and, if so, whether insurers can charge a premium for it.[1] The federal district court stayed the matter pending this Court's answer to the certified question. We do so now.

## III.    DISCUSSION

**{13}** Our task is to determine (1) whether underinsurance motorist coverage on a policy that offers minimum uninsured/underinsured motorist limits is illusory for an

---

[1] The dissent inserts hypothetical facts not present in the certified question in its effort to challenge the majority's reasoning, stating "where an insured with minimum UM/UIM coverage has multiple vehicles, or where an insured has multiple minimum UM/UIM policies available, the insured may be entitled to stack coverages and recover UIM benefits." Dissent ¶ 40 (footnote omitted). Unlike the dissent, the majority contains its opinion to the question presented. *See Schlieter v. Carlos*, 1989-NMSC-037, ¶ 11, 108 N.M. 507, 775 P.2d 709.

insured person who sustains more than $25,000 in damages caused by a minimally insured tortfeasor, and (2) if this type of coverage is illusory, whether an insurance company may charge premiums for such a policy. This analysis requires us to interpret New Mexico's statute governing underinsurance motorist coverage. *See* § 66-5-301 ("Insurance against uninsured and unknown motorists; rejection of coverage by the insured.").

**{14}** "Statutory interpretation is a question of law, which we review de novo." *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69. "When this Court construes statutes, our charge is to determine and give effect to the Legislature's intent." *Moongate Water Co., Inc. v. City of Las Cruces*, 2013-NMSC-018, ¶ 6, 302 P.3d 405 (internal quotation marks and citation omitted). "To determine legislative intent, [this Court] look[s] not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Hovet*, 2004-NMSC-010, ¶ 10; *see also* NMSA 1978, § 12-2A-18(A)(1) (1997) ("A statute or rule is construed, if possible, to[] give effect to its objective and purpose[.]").

## A.     New Mexico's UM/UIM Statutory Provisions

**{15}** The Mandatory Financial Responsibility Act requires all motorists to carry minimum insurance liability limits of $25,000 per person, $50,000 per occurrence. *See* § 66-5-215(A)(1)-(2). The statute governing uninsured and underinsured motorist coverage in turn states:

> No motor vehicle or automobile liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property of others arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in New Mexico with respect to any motor vehicle registered or principally garaged in New Mexico *unless coverage is provided therein or supplemental thereto in minimum limits for bodily injury or death and for injury to or destruction of property as set forth in Section 66-5-215 NMSA 1978.*

Section 66-5-301(A) (emphasis added). Section 66-5-301(A) requires motorists to carry uninsured motorist insurance of at least the amounts set forth in Section 66-5-215. Section 66-5-301(A) provides that a motorist may purchase more UM/UIM coverage, but it may not exceed the total amount of liability coverage purchased. ("[H]igher limits . . . may be . . . up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy."). In other words, the statute requires that liability coverage is the limiting factor if an insured desires to purchase a greater amount of UM/UIM coverage.

**{16}** Underinsured motorist insurance is a subcategory of uninsured motorist insurance. Section 66-5-301(B) defines "underinsured motorist" as follows:

The uninsured motorist coverage described in Subsection A of this section shall include underinsured motorist coverage for persons protected by an insured's policy. For the purposes of this subsection, "underinsured motorist" means an operator of a motor vehicle with respect to the ownership, maintenance or use of which *the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage*.

(Emphasis added.)

**{17}** Read together, Section 66-5-215(A)(1)-(2) and Section 66-5-301(A)-(B) require motorists to carry liability insurance limits of at least $25,000 per person and $50,000 per occurrence *and* uninsured motorist coverage (which includes underinsured motorist coverage) of at least the same amount. *See Weed Warrior*, 2010-NMSC-050, ¶ 10. Again, only if the motorist purchases higher than minimum liability coverage may higher than minimum UM/UIM coverage be purchased. *See* § 66-5-301(A).

**B.      New Mexico's Statutory Offset Rule as Announced in *Schmick***

**{18}** To answer the questions posed in the Certification Order, we turn to the legislative purpose and intent of the above provisions. NMSA 1978, § 12-2A-18(A)(1) (1997) ("A statute or rule is construed, if possible, to[] give effect to its objective and purpose."). When it comes to underinsurance, there are two policy theories of coverage that evince themselves in a jurisdiction's statute: (1) gap theory and (2) excess theory or floating layer theory. *See Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1143-45 (D.N.M. 2019) (hereinafter *Bhasker II*) (quoting *State Auto. Mut. Ins. Co. v. Youler*, 396 S.E.2d 737, 747-748) (W.Va. 1990). In jurisdictions that have adopted the gap theory, underinsurance coverage will compensate an insured injured driver up to the amount of UM/UIM protection purchased. *Id.* In jurisdictions that have adopted the excess theory or floating layer theory, underinsurance will fully compensate an insured injured driver for the cost of the driver's damages, even if the total is more than what the driver purchased in UM/UIM coverage. *Bhasker II*, 361 F. Supp. 3d at 1144-45. As discussed below, New Mexico has adopted the gap theory, because "the most an insured can receive is the amount of underinsurance purchased for [the insured's] benefit, [and] that amount must be offset by available liability proceeds." *Schmick*, 1985-NMSC-073, ¶ 30.

**{19}** In *Schmick*, this Court determined that the New Mexico Legislature intended to "put an injured insured [driver] in the same position [the driver] would have been in had the tortfeasor had liability coverage in an amount equal to the uninsured/underinsured motorist protection purchased for the insured's benefit." *Id.* ¶ 10. In describing the district court's position, the *Schmick* Court stated it succinctly: "the underinsurance coverage . . . [is] not in addition to that provided by the other vehicle but [is] intended to supplement the amount paid by the underinsured motorist so that the insured recover[s] an amount equal to the uninsured motorist protection purchased." *Id.* ¶ 5. Consistent with this legislative intent, we determined that, "under a statute like ours, where the

most an insured can receive is the amount of underinsurance purchased for [the insured's] benefit, that amount must be offset by available liability proceeds." *Id.* ¶ 30. This is known as the offset rule.

{20} Pursuant to the offset rule, underinsured motorist benefits are calculated by subtracting the amount of the insured's uninsured motorist coverage from the amount of the tortfeasor's liability coverage. *Id.* ¶ 24 ("[A]n insured collects from his underinsured motorist carrier the difference between his uninsured motorist coverage and the tortfeasor's liability coverage or the difference between his damages and the tortfeasor's liability coverage, whichever is less."). A significant consequence of this rule is that, if injured persons purchased only the statutory minimum policy, the person's policy will not cover losses for damages in excess of $25,000. Collection of UIM insurance is therefore practically impossible for minimally insured motorists, and collection is not possible in Mr. Crutcher's case.

{21} This impossibility was identified and highlighted by this Court in *Weed Warrior* where it was determined that, "[i]f the tortfeasor carried the statutory minimum of liability insurance and the injured driver carried the statutory minimum of UM/UIM coverage, the injured driver would have no recourse for injuries suffered over the minimum amount of $25,000." *Weed Warrior*, 2010-NMSC-050, ¶ 10. Stated differently, there will never be an instance in which there is an "underinsured motorist" if both parties in a car accident are minimally insured because the minimum limits, both being $25,000/$50,000, will always cancel each other out. *See* § 66-5-301(B); *see also Weed Warrior*, 2010-NMSC-050, ¶ 10. Consequently, "[t]he injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of 'UIM' in the statute superfluous." *Weed Warrior*, 2010-NMSC-050, ¶ 10.

{22} Mr. Crutcher found himself in the precise situation predicted by this Court in *Weed Warrior* when he was hit by someone who was minimally insured and did not carry enough liability insurance to cover the cost of his injuries. Mr. Crutcher, like other policyholders who are not fully versed in the intricacies of insurance law, may not have understood that he was not eligible to receive underinsurance coverage from his policy despite paying a premium for it. The Court in *Weed Warrior* concluded that it was the obligation of the insurance company to clearly provide its policyholders the opportunity to match its UM/UIM policy with their liability coverage. *See Weed Warrior*, 2010-NMSC-050, ¶ 13. Consistent with this reasoning, we now conclude that the Legislature intended to place the burden on the policyholders to determine how much protection they want and are willing to pay for, and that this burden is conditioned upon the policyholders having knowledge of what they are purchasing. The certified question asks us to resolve this point and to determine whether an insurer may charge a premium for such policies.

## C. Whether the Minimum Limits UM/UIM Policy Is Illusory

{23} Mr. Crutcher asserts that his coverage is illusory because, as a purchaser, he reasonably believed that the coverage was more than it was and because a policyholder with minimum UM/UIM coverage may never reap the benefits of the

underinsured motorist coverage. Similar to the plaintiff in *Bhasker v. Kemper Casualty Insurance Co.*, 284 F. Supp. 3d 1191 (D.N.M. 2018) (hereinafter *Bhasker I*), Mr. Crutcher seems to use the word "illusory" to refer to valueless minimum limits coverage and also as a synonym for the word "deceptive." *Bhasker I*, 284 F. Supp. 3d at 1238 ("[The petitioner]seems to be arguing, generally, that her UM/UIM policy did not cover what she thought it would, in which case the UIM coverage was illusory in the sense that it appeared to be something it was not."). Thus, Mr. Crutcher does not necessarily allege that the policy is "illusory" as the term is applied in contract law. *See generally* Richard A. Lord, 3 *Williston on Contracts* § 7:7, at 88–89 (4th ed. 1992) (stating that an illusory promise cannot serve as consideration); *see also Bd. of Educ., Gadsden Indep. Sch. Dist. No. 16 v. James Hamilton Constr. Co.*, 1994-NMCA-168, ¶ 19, 119 N.M. 415, 891 P.2d 556 ( "A purported promise that actually promises nothing because it leaves the choice of performance entirely to the offeror is illusory, and an illusory promise is not sufficient consideration to support a contract."); *see also Bhasker I*, 284 F. Supp. 3d at 1238 (reasoning that the plaintiff's "claims [were] not based on legal theories in which the coverage's illusory nature is an element necessary to prove." (internal quotation marks omitted)).

**{24}**    In essence, Mr. Crutcher is challenging Defendant's representation and disclosure about the nature of the coverage. Mr. Crutcher's theory, much like the plaintiff's theory in *Bhasker I*, is that Defendant misled him when Defendant sold him UIM coverage under the pretense that he would receive full UIM coverage. *Bhasker I*, 284 F. Supp. 3d at 1238. This argument has been made and addressed by federal courts in similar litigation. *See id.*; *see also Apodaca v. Young Am. Ins. Co.*, CIV 18-0399, 2019 WL 231757, at *6 (D.N.M. Jan. 16, 2019) ("Plaintiff contends that . . . her UM/UIM policy did not provide the bodily injury coverage that she expected based on the information [the insurer] presented . . . [and that the insurer] misled her about what the UM/UIM policy covered." (internal quotation marks omitted)); *see also Schwartz v. State Farm Mut. Auto. Ins. Co.*, 1:18-CV-00328, 2018 WL 4148434, at *5 (D.N.M. Aug. 30, 2018) ("Plaintiff alleges that Defendant misrepresented to her that she would benefit from the underinsured coverage when [it] should have known that the coverage was meaningless. In other words, Plaintiff argues that Defendant failed to inform her that the coverage she was purchasing would provide little to no coverage.").

**{25}**    In response, Safeco asserts that the combined coverage provides value because, while the policy does not protect against the risk of being hit by an underinsured driver, the policyholder will still receive the benefits of uninsured motorist insurance if involved in an accident with a driver with no insurance at all. This, it argues, is consistent with New Mexico case law and the Legislature's intent. Safeco further argues that because Mr. Crutcher received benefits under a combined UM/UIM coverage, as required by New Mexico statute, the coverage could not have been illusory as a matter of law or misleading, and the premium charged is per se reasonable. *See* § 66-5-301(B) ("[U]ninsured motorist coverage . . . shall include underinsured motorist coverage."). We address these arguments in turn.

**{26}**    First, we find no merit in Defendant's argument that the language of the statute provides immunity from claims that it misrepresented the coverage available to

consumers like Mr. Crutcher. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels. We have long held that:

> The courts of New Mexico assume the average purchaser of automobile insurance will have limited knowledge of insurance law, and we will not impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of UM/UIM coverage desired or required without first receiving information from the insurance company.

*Weed Warrior,* 2010-NMSC-050, ¶ 13 (internal quotation marks and citation omitted); *see also Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 17, 111 N.M. 154, 159, 803 P.2d 243, 248 (reasoning that the duty to read one's insurance policy and become familiar with its terms may be less binding, "[g]iven the realities of the automobile liability insurance business in which the unfamiliar terminology of a policy describes coverage under complex rights and obligations of personal injury and liability law, . . . an insured who is unsophisticated in business affairs, and . . . the public policy favoring insurance coverage for personal injury"). We refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule derived by its technical language.

**{27}**    Regarding Safeco's second argument, it is correct that, if hit by a tortfeasor without insurance, policyholders will receive uninsured motorist (UM) benefits. However, this only demonstrates that Safeco is properly disclosing that it covers *half* of the risk purportedly covered by a minimum limits UM/UIM policy. As has been established, a tortfeasor who carries minimum limits UM/UIM coverage or higher may never fit the definition of an "underinsured motorist" according to the statute, rendering a policyholder unable to collect UIM insurance. *See Weed Warrior*, 2010-NMSC-050, ¶ 10 ("The injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of 'UIM' in the statute superfluous."). The Court in *Weed Warrior* concluded that it was the obligation of the insurance company to clearly provide its policyholders the opportunity to match their UM/UIM policy with their liability coverage. *Id.* ¶ 15. In this case, we are simply identifying the same consequence previously illuminated in *Weed Warrior*. *Id.* ¶ 10 ("An insured carries UIM coverage only if the UM/UIM limits on her or his policy are greater than the statutory minimum of $25,000."). Thus, while we are persuaded by Mr. Crutcher's argument that the minimum limits UM/UIM coverage is illusory because it is misleading to the average insurance purchaser, we nevertheless conclude that the policy still retains some value for policyholders.

**{28}**    Finally, our review of the applicable statutory language makes clear that the sale of this type of insurance is reflective of the statutory scheme purposefully selected by the New Mexico Legislature, and thus is permitted despite being misleading. *See* § 66-5-301(B). We recognize that the result achieved in excess theory jurisdictions "is more equitable in that the injured insured collects all proceeds for which, ostensibly, a premium has been paid and has his or her damages compensated more fully," but that "New Mexico's uninsured/underinsured motorist statute, as presently enacted by our

Legislature does not allow for such recovery." *Schmick*, 1985-NMSC-073, ¶ 31. New Mexico lawmakers have purposefully chosen to adopt a gap theory of underinsurance coverage, and it is within their power to do so. If they are so inclined, state lawmakers are also empowered to revisit the state's uninsured motorist coverage statutory scheme in light of the issues outlined by this case. However, we are bound by the language that the New Mexico Legislature has chosen. We therefore conclude that the law allows an insurer to sell minimum limits UM/UIM coverage to a policyholder and only provide coverage for uninsured motorist coverage, and that insurers may charge a premium for such coverage as long as they make a proper disclosure to the policyholder, as discussed hereunder.

### D. Insurers Must Provide Adequate Disclosure of the UIM Exclusion

**{29}** While charging premiums for minimum limits UM/UIM coverage may be legally permitted, this Court remains concerned about an average policyholder's understanding of the true limits of this type of coverage. "In construing standardized policy language, our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who, we assume, will have limited knowledge of insurance law." *Computer Corner, Inc. v. Fireman's Fund Ins. Co.*, 2002-NMCA-054, ¶ 7, 132 N.M. 264, 46 P.3d 1264. "[L]anguage at issue should be considered not from the viewpoint of a lawyer or a person with training in the insurance field, but from the standpoint of a reasonably intelligent lay[person]." *Taos Ski Valley, Inc. v. Nova Cas. Co.*, 153 F. Supp. 3d 1351, 1353 (D.N.M. 2015) (internal quotation marks omitted) (quoting *Computer Corner, Inc.*, 2002-NMCA-054, ¶ 7), *aff'd*, 705 F. App'x 749 (10th Cir. 2017).

**{30}** In order to fulfill the UM/UIM statute's legislative purpose to place the burden on the policyholders to determine how much protection they would like to purchase, the policyholders must be fully informed of the relative benefits and limitations of a given policy. *See* § 12-2A-18(A)(1). If a person pays for something called "underinsured motorist" insurance, we think it reasonable for the person to be under the impression that he or she is, in fact, eligible to receive UIM coverage if involved in an accident with someone who does not have enough insurance to cover the costs of the insured's injuries. The average insured driver likely has limited knowledge of insurance law and may not understand the details of the underinsurance law statute, Section 66-5-301(B), and the *Schmick* offset rule, and therefore may not understand that by choosing to purchase only the statutory minimum amount of UM/UIM insurance, he or she will never receive the benefit of underinsured motorist coverage. *See Apodaca*, 2019 WL 231757, at *7 ("[M]erely reading the offset provision in the policy would not inform an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value." (quoting *Schwartz*, 2018 WL 4148434, at *6)); *see also Weed Warrior*, 2010-NMSC-050, ¶ 13 ("The courts of New Mexico assume the average purchaser of automobile insurance will have limited knowledge of insurance law, and we will not impose on the consumer an expectation that she or he will be able to make an informed decision as to the amount of UM/UIM coverage desired or required without first receiving information from the insurance company." (internal quotation marks and citation omitted)).

**{31}** Although not illusory based on the contractual definition, we agree with Mr. Crutcher that minimum UM/UIM coverage is misleading because policyholders are not adequately informed that they are not eligible to receive UIM coverage pursuant to the Mandatory Financial Accountability Act and the corresponding offset rule articulated in *Schmick*. This potential outcome should be explicitly disclosed to policyholders like Mr. Crutcher who are selecting a policy called "Uninsured and Underinsured Motorist Coverage" and expecting to receive insurance benefits under either circumstance. *Romero*, 1990-NMSC-111, ¶ 17. In purchasing this insurance, policyholders may believe that they are bargaining for both the risk of being in an accident with (1) an uninsured tortfeasor and (2) an underinsured tortfeasor, while in reality, they are only bargaining for the risk of the former.

**{32}** "It is the obligation of the insurer to draft an exclusion that clearly and unambiguously excludes coverage." *Battishill v. Farmers Alliance Ins. Co.*, 2004-NMCA-109, ¶ 12, 136 N.M. 288, 97 P.3d 620 (internal quotation marks omitted) (quoting *Computer Corner, Inc.*, 2002-NMCA-054, ¶ 7), *rev'd on other grounds*, 2006-NMSC-004, 139 N.M. 24, 127 P.3d 1111. Therefore, hereafter, the insurer shall bear the burden of disclosure to the policyholder that a purchase of the statutory minimum of UM/UIM insurance may come with the counterintuitive exclusion of UIM insurance if the insured is in an accident with a tortfeasor who carries minimum liability insurance. Consistent with the purpose and intent of the UIM statute, this disclosure will allow purchasers to make a fully informed decision when selecting UM/UIM insurance coverage.

## IV.    CONCLUSION

**{33}** For the foregoing reasons, we conclude that UM/UIM coverage at the minimum level is permitted because the law not only allows, but requires, it to be sold as was done so here. However, such coverage is illusory because it is misleading to the average policyholder. As such, we will now require every insurer to adequately disclose the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy. If the insurer provides adequate disclosure, it may lawfully charge a premium for such coverage.

**{34}   IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**C. SHANNON BACON, Justice**

**JUDITH K. NAKAMURA, Justice, retired, dissenting**
**Sitting by designation**

**NAKAMURA, Justice, retired (dissenting).**

{35}   The majority holds that a policy providing UM/UIM coverage at minimum limits is illusory because it "may mislead" policyholders into believing that they will receive underinsured motorist coverage when, "in reality they may never receive such a benefit." Maj. op. ¶ 2. Nevertheless, the majority also concludes insurance companies may continue to offer and charge a premium for UM/UIM coverage at minimum limits— provided they disclose that such coverage may never provide UIM benefits to the insured. *See supra* ¶¶ 29-32. This disclosure is to be labeled an "exclusion." *Supra.*

{36}   In my view, this holding rests on two flawed premises, and the disclosure mandated of insurance companies is incorrect and likely to generate confusion. Accordingly, I respectfully dissent.

{37}   The majority's first premise is that insureds expect UIM coverage to be make-whole coverage. Maj. op. ¶ 30 (stating that it would be "reasonable" for an insured "to be under the impression that he or she is, in fact, eligible to receive UIM coverage if involved in an accident with someone who does not have enough insurance to cover the cost of the insured's injuries"); *see Fagundes v. Am. Int'l Adjustment Co.*, 3 Cal. Rptr. 2d 763, 765 (Cal. Ct. App. 1992) (explaining that make-whole UIM coverage compensates an injured insured for the difference between his or her damages and the tortfeasor's liability coverage). The majority even defines UIM coverage as protecting "drivers who are hit by a tortfeasor who does not have enough auto insurance to cover the cost of the driver's injuries and damages," maj. op. ¶ 5,[2] as though make-whole coverage is the generally-understood function or definition of UIM coverage.

{38}   UIM coverage in New Mexico has never been so defined. As the majority acknowledges, our statutory law instead provides for "gap theory" coverage that compensates an injured insured *up to the amount of UM/UIM coverage purchased*, not up to the amount of the injured insured's damages. Maj. op. ¶¶ 18-19; *see* § 66-5-301(B). The policy objective of gap theory coverage differs from the policy objective of make-whole coverage; that is, gap theory coverage aims to "put an injured insured in the same position he would have been in had the tortfeasor had liability coverage in an amount equal to the" insured's UM/UIM coverage. *Schmick*, 1985-NMSC-073, ¶ 10; *see* § 66-5-301(B). Thus, UIM benefits in New Mexico are the "amount by which the insured's [UM/UIM] coverage exceeds the tortfeasor's liability insurance." *Schmick*, 1985-NMSC-073, ¶¶ 22, 28 (explaining that this "offset is *inherent in our statutory definition of underinsured motorist*" (emphasis added)). In sum, in New Mexico, the defining comparison is between the tortfeasor's liability insurance and the injured person's UM/UIM insurance, not between the tortfeasor's liability insurance and the injured person's damages. *See* maj. op. ¶ 18.

{39}   A necessary effect of New Mexico's gap theory policy is that a minimally insured person is the least likely of all insureds to recover UIM benefits. That is, most other motorists will have at least the statutory minimum in liability coverage and will, therefore,

---

[2]Section 66-5-301(B), although cited by the majority, does not contain this definition.

not be underinsured. I fail to see how this effect is misleading unless the background expectation of insureds is that UIM coverage in New Mexico is make-whole coverage. In that case, UIM coverage in New Mexico is misleading to everyone, including injured drivers with greater than minimum UM/UIM limits whose damages exceed the liability coverage of the tortfeasor. But the record contains no basis for this conclusion. Furthermore, it is the Legislature's role to assess the relative benefits and drawbacks of New Mexico's UIM policy and, to the extent the Legislature concludes the policy has proved unwise, to amend the statute. The Legislature has made no such amendments, even though this Court decided *Schmick*, interpreting the offset consequence of the UIM statute, some thirty-six years ago. Given this legislative silence, I cannot join the majority's view that an insurance company offering UM/UIM coverage as interpreted in *Schmick* and required by New Mexico's UM/UIM statute "sanction[s] deception," maj. op. ¶ 26. *See Shepard v. United States*, 544 U.S. 13, 23 (2005) ("[T]he claim to adhere to case law is generally powerful once a decision has settled statutory meaning."); 2B Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 49:4, at 22 (7th ed. 2012) (observing that "considerations of stare decisis weigh heavily in the area of statutory construction" (internal quotation marks and citation omitted)); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 864 (1992) (holding that courts should not reexamine precedent absent some "justification beyond a present doctrinal disposition to come out differently").

**{40}**   This leads to the majority's second flawed premise: that New Mexico's UM/UIM statute *never*, in practice, provides UIM benefits to insureds with minimum-limits policies. Maj. op. ¶ 21 ("[T]here will never be an instance in which there is an 'underinsured motorist' if both parties in a car accident are minimally insured, because the minimum limits . . . will always cancel each other out."); *supra* ¶ 30 ("[B]y choosing to purchase only the statutory minimum amount of UM/UIM insurance, [the insured] will never receive the benefit of underinsured motorist coverage."). This assertion is inaccurate, as demonstrated by scenarios presented in numerous cases before our courts. For example, where an insured with minimum UM/UIM coverage has multiple vehicles, or where an insured has multiple minimum UM/UIM policies available, the insured may be entitled to stack[3] coverages and recover UIM benefits. *See, e.g.*, *Fasulo v. State Farm Mut. Auto. Ins. Co.*, 1989-NMSC-060, ¶¶ 3, 16, 108 N.M. 807, 780 P.2d 633 (holding, *inter alia*, that three minimum-limits UM/UIM policies could be stacked to provide $75,000 in UIM benefits, offset by the tortfeasor's liability limits); *Morro*, 1988-NMSC-006, ¶¶ 1-2, 11, 13 (concluding that an insured could stack two minimum-limits UM/UIM policies to provide UIM benefits where the tortfeasor had a minimum-limits liability policy); *Konnick v. Farmers Ins. Co. of Ariz.*, 1985-NMSC-070, ¶¶ 2, 15-16, 103 N.M. 112, 703 P.2d 889 (same); *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶¶ 18-19, 28, 135 N.M. 681, 92 P.3d 1255 (explaining that stacking is the default coverage). In fact, the appellant in *Schmick* stacked two minimum-limits policies and received UIM benefits as a result. *See* 1985-NMSC-073, ¶¶ 20-22. An accident

---

3"The term 'stacking' refers to an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until all damages either are satisfied or the total policy limits are exhausted." *Morro v. Farmers Ins. Grp.*, 1988-NMSC-006, ¶ 5, 106 N.M. 669, 748 P.2d 512.

involving multiple claimants may also entitle a claimant with minimum-limits coverage to recover UIM benefits if the liability coverage of the tortfeasor is inadequate to cover multiple claims at minimum limits. *See*, *e.g.*, *Gonzales v. Millers Cas. Ins. Co. of Tex.*, 923 F.2d 1417, 1422 (10th Cir. 1991) (interpreting Section 66-5-301(B) to require comparison between the liability coverage benefits actually available to satisfy multiple claims and the UIM coverage of each claimant to determine whether the tortfeasor was underinsured). In short, there are evidently real-world circumstances in which insureds with minimum UM/UIM limits will recover UIM benefits.

**{41}** This reality animates one of my objections to the majority's solution: requiring insurance companies to disclose, as a policy exclusion, the advisement that minimum-limits UM/UIM coverage "may come with the counterintuitive exclusion of UIM insurance if the insured is in an accident with a tortfeasor who carries minimum liability insurance." Maj. op. ¶ 30. This advisement is wrong, for the reasons just stated; furthermore, it does not operate to "restrict the scope of the policy beyond what would otherwise be covered" and is therefore not an *exclusion* as our case law defines the term, *see United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 18, 285 P.3d 644. Finally, burdening insurance companies with a disclosure about the effect of coverage already defined, *consistent with the law*, in the insurance contract (as it was here, where Safeco used the language from Section 66-5-301(B) in its policy language) is a substantial departure from our prior holdings. The majority quotes *Weed Warrior* and *Romero*, maj. op. ¶ 26, but neither of these holdings provide support for the disclosure required here. In *Weed Warrior*, we interpreted New Mexico's UM/UIM statute to compel insurance companies to offer UM/UIM coverage in an amount up to the liability limits of an insured's policy coverage. *See* 2010-NMSC-050, ¶ 15. In *Romero*, we interpreted the UM/UIM statute and associated regulations to necessitate that an insured's rejection of UM/UIM coverage be endorsed and attached to or incorporated into the insured's policy. *See* 1990-NMSC-111, ¶ 17. The duties imposed on insurance companies in both cases were pursuant to what the UM/UIM statute and/or regulations required. Here, by contrast, the majority requires an (incorrect) explanation of the *effect* of the UM/UIM statute, cast as a coverage exclusion. I see no basis in the law for the imposition of such a requirement, and I fear it will not meaningfully aid insureds in understanding and selecting among coverage options.

**{42}** For the foregoing reasons, I respectfully dissent.

**JUDITH K. NAKAMURA, Justice**
**Retired, sitting by designation**