**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: June 16, 2014

Docket No. 34,280

THOMAS PATRICK WHELAN, JR., as
Personal Representative of the ESTATE of
THOMAS PATRICK WHELAN, SR., Deceased,

      Plaintiff-Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellant.

**CERTIFICATION FROM THE NEW MEXICO COURT OF APPEALS**
**Barbara J. Vigil, District Judge**

Guebert Bruckner, P.C.
Terry R. Guebert
Albuquerque, NM

for Appellant

O'Friel & Levy, P.C.
Daniel J. O'Friel
Aimee S. Bevan
Santa Fe, NM

for Appellee

Simone, Roberts & Weiss, P.A.
Meena H. Allen
Albuquerque, NM

for Amici Curiae Property Casualty Insurers Association of America
and National Association of Mutual Insurance Companies

**OPINION**

**DANIELS, Justice.**

**{1}** In *Montaño v. Allstate Indemnity Co.*, a case we acknowledged was a "new direction" in our jurisprudence, this Court modified previously approved procedures for an automobile liability insurance carrier to limit its statutory obligation to stack uninsured and underinsured motorist (UM/UIM) coverage under multiple liability policies, and we established new procedural safeguards of an insured's rights by requiring that insurance carriers obtain explicit written rejections of stacking in order to limit their statutory obligations. 2004-NMSC-020, ¶ 1, 135 N.M. 681, 92 P.3d 1255. Following the approach established in *Montaño*, we held in *Jordan v. Allstate Ins. Co.* that effective rejection of an insured's statutory rights to UM/UIM coverage equal to liability limits must be made in writing and must be made a part of the insurance policy that is delivered to the insured. 2010-NMSC-051, ¶ 2, 149 N.M. 162, 245 P.3d 1214. Because our result in *Jordan* was foreshadowed by *Montaño* and other precedents, we declined to make *Jordan* applicable only to cases arising in the future and held that policies that failed to comply with *Jordan's* rejection requirements would be judicially reformed to provide full statutory coverage. 2010-NMSC-051, ¶¶ 27, 29.

**{2}** In 2011, following our 2010 issuance of *Jordan*, Plaintiff Thomas P. Whelan, Jr., made a demand on his insurer State Farm for reformation of a policy in effect at the time of the 2002 accident that resulted in the death of Plaintiff's father in 2004. Relying on a clause in the policy that purported to bar UM/UIM claims made more than six years after the date of the underlying accident, State Farm rejected the claim. Plaintiff then instituted a declaratory judgment action against State Farm for reformation of the policy.

**{3}** We hold that a limitations clause based solely on the date of the accident without consideration of the actual accrual of the right to make a UM/UIM claim is unreasonable and unenforceable as a matter of law. But addressing the merits of Plaintiff's action, we also hold that judicial reformation under *Jordan* does not extend to historical insurance contracts formed before *Montaño* was issued in 2004. Because the policy in this case was issued before that date, it is not subject to retroactive reformation of its facial lack of UM/UIM coverage.

## I. BACKGROUND

**{4}** Thomas P. Whelan, Sr., Plaintiff's decedent father, was in Plaintiff's parked truck when it was hit by a moving vehicle in July 2002. The collision allegedly resulted in severe injuries and medical costs in excess of $100,000 and ultimately in the decedent's death in March 2004. At the time of the accident, occupants of Plaintiff's truck were insureds under the terms of a $50,000 liability policy issued by State Farm (Insurer) facially providing no UM/UIM coverage.

**{5}** Having received only the $25,000 liability policy limits from the carrier for the at-

fault driver and following release of our opinion in *Jordan*, Plaintiff made a demand on Insurer in June 2011 for $25,000 in underinsured motorist coverage to equalize the UM/UIM coverage with the $50,000 liability coverage limits under Plaintiff's State Farm policy in effect at the time of the accident. After Insurer refused to equalize the UM/UIM coverage, Plaintiff filed a declaratory judgment action against Insurer, seeking to invalidate Plaintiff's previous rejection of the statutory UM/UIM coverage and to reform the policy to provide UM/UIM coverage equal to its liability coverage limits of $50,000.

**{6}** In opposition to Plaintiff's summary judgment motion, Insurer argued that the suit was barred by a limitations provision in the policy: "Under the uninsured and unknown motorists coverage, any arbitration or suit against us will be barred unless commenced within six years after the date of the accident." Insurer also argued that ignoring a "bargained for" contractual provision and giving an insured a benefit he never paid for would violate the New Mexico and the United States Constitutions, "[w]hether characterized as a violation of Due Process, principles of fundamental fairness, a constitutional taking, or otherwise."

**{7}** The district court granted Plaintiff's summary judgment motion. It concluded that UM/UIM coverage must be equalized with the limits of the policy's liability coverage, pursuant to *Progressive N.W. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 15, 149 N.M. 157, 245 P.3d 1209 (holding that New Mexico law requires an insurer to offer UM/UIM coverage equal to the liability limits and that the choice of an insured to purchase any lower amount functions as a rejection of that maximum amount of coverage statutorily available), and *Jordan*, 2010-NMSC-051, ¶¶ 2, 29 (addressing requirements for a valid informed selection of UM/UIM coverage and retroactively reforming policies for which rejection of UM/UIM coverage was invalid). The district court also concluded that enforcing a time limit that ran from the date of the accident for contract-based UM/UIM claims, before the UM/UIM cause of action arose, was unreasonable and unenforceable and that the UM/UIM claim on the policy accordingly was not time-barred.

**{8}** The Court of Appeals certified Insurer's appeal to this Court pursuant to Rule 12-606 NMRA for us to decide (1) whether there is any temporal limit to the retroactivity ruling stated in *Jordan* and (2) whether the contract-based requirement in this case that a UM/UIM claim is barred if not brought within six years from the date of the accident is enforceable.

## II.    DISCUSSION

**{9}** The issues before us are questions of law that we review de novo. *Jordan*, 2010-NMSC-051, ¶ 14. We address first the validity of the contract clause barring UM/UIM claims made six years or more after the date of the underlying accident.

### A.    The Provision Barring Enforcement of UM/UIM Coverage Six Years After an Accident Is Unreasonable and Unenforceable

**{10}** Before we can decide the reasonableness and enforceability of a limitations clause,

3

we must consider the right that is being limited. The UM/UIM statute, NMSA 1978, Section 66-5-301 (1983), seeks "to protect individual members of the public against the hazard of culpable uninsured motorists." *Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 6, 111 N.M. 154, 803 P.2d 243. Subsection A of Section 66-5-301 requires that uninsured motorist coverage be included in all liability insurance policies issued in connection with automobiles. *See id.* ("No . . . automobile liability policy insuring against loss resulting from liability . . . shall be . . . issued . . . unless coverage is provided therein . . . up to the limits of liability . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . . ."). Subsection B of Section 66-5-301 requires the same for underinsured motorist coverage. ("The uninsured motorist coverage described in Subsection A . . . shall include underinsured motorist coverage for persons protected by an insured's policy."). Subsection C of Section 66-5-301 gives the insured the right to reject UM/UIM coverage.

**{11}** *Brooks v. State Farm Ins. Co.*, 2007-NMCA-033, ¶¶ 10-11, 141 N.M. 322, 154 P.3d 697, rejected an insurer's argument that an insured's UM/UIM cause of action against an insurer accrues on the date of the underlying accident, holding that the claim is based on an alleged breach of the insurance contract and therefore accrues after the insurer refuses to pay the claim. The extent of the insured's injuries and entitlement to damages and the shortfall in the tortfeasor's liability coverage may not be apparent for months or years after the date of an accident. *Brooks* recognized that an insurer has the ability to protect itself from uncertainty caused by prejudicial delays in assertion of UM/UIM claims by including "appropriate time limitations" in its insurance contracts. *Id.* ¶ 18 (internal quotation marks and citation omitted). But, significantly, it concluded that because "the date of accident is particularly extraneous to actions for specific performance of a contract to arbitrate involving UIM coverage," it would be "fundamentally unfair to time-bar an insured from compensation that was bargained for because an insured may not be aware until sometime after the accident that a claim against her underinsured motorist insurer must be pursued." *Id.* ¶ 16 (internal quotation marks and citation omitted).

**{12}** Time limitations in the insurance contract serve multiple purposes. *See Roberts v. Sw. Cmty. Health Servs.*, 1992-NMSC-042, ¶ 25, 114 N.M. 248, 837 P.2d 442 ("One policy consideration that a statute of limitations seeks to further is basic fairness to the [insurer]. Under this broad umbrella fall purposes such as encouraging promptness in instituting a claim, suppressing stale or fraudulent claims, and avoiding inconvenience. In addition, a statute of limitations is a statute of repose that encourages plaintiffs to bring their actions while the evidence is still available and fresh." (citations omitted)).

**{13}** In the absence of a contrary provision in the insurance policy, we have held that the period of limitation for UM/UIM legal actions should be the statutory period of limitation for contract actions, six years. *Ellis v. Cigna Prop. & Cas. Cos.*, 1999-NMSC-034, ¶ 6, 128 N.M. 54, 989 P.2d 429 (holding that the statute limiting claims for contract actions to six years does apply to UM/UIM claims). *See* NMSA 1978, § 37-1-3(A) (1975). A general contract provision in the policy in this case bars any suit or arbitration against Insurer six

years after the date of the accident. In New Mexico, "unambiguous exclusionary language is controlling only when not in conflict with public policy, as promulgated by the uninsured motorist statute and applicable regulations." *Romero*, 1990-NMSC-111, ¶ 17; *see Chavez v. State Farm Mut. Auto. Ins. Co.*, 1975-NMSC-011, ¶ 6, 87 N.M. 327, 533 P.2d 100 ("[E]xclusionary (provisions) in insurance contracts shall be enforced so long as their meaning is clear and they do not conflict with statutory law." (internal quotation marks and citation omitted)); *Sandoval v. Valdez*, 1978-NMCA-016, ¶ 11, 91 N.M. 705, 580 P.2d 131 (stating that a contractual time limitation is "enforceable only if it is not in conflict with statutory law or public policy of New Mexico"); 17 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance*, § 236:18 (3d ed. 1995, 12/2000 pamp.) ("When faced with [an insurance] policy period that deviates from the statutory provision, the practitioner can review any applicable legislative history to determine the relevant public policy. If the policy provision as drafted is against public policy, the courts will avoid it."). In order to formally structure such a case-by-case approach, "[g]enerally, courts will enforce contractual time limitation provisions when the provisions satisfy a two-pronged test: (1) the limitations period must be reasonable; and (2) the provision must be clear and unambiguous." Jeffrey A. Kelso & Matthew R. Drevlow, *When Does the Clock Start Ticking? A Primer on Statutory and Contractual Time Limitation Issues Involved in Uninsured and Underinsured Motorist Claims*, 47 Drake L. Rev. 689, 700 (1999).

**{14}** Our insurance jurisprudence has sought how to "best balance[] the interests in permitting private contractual relations between parties, and honoring the broad intent of the [UM/UIM] statute." *Montaño*, 2004-NMSC-020, ¶ 18 (internal quotation marks and citation omitted). Also following that approach, the Court of Appeals has held that an insurance contract provision limiting the time period in which an insured could bring suit against the insurer was unenforceable because it conflicted with the broad protections of the UM/UIM statute in effect at that time. *See Sandoval*, 1978-NMCA-016, ¶ 9 ("Although in many cases a 'time to sue' provision is as controlling as any other contract provision agreed upon by both parties, the question involved in this appeal is the effect New Mexico's uninsured motorist statute has on this 'time to sue' provision."). *Sandoval* held that a provision that barred suit one year after the date of the accident was not enforceable because it was shorter than the statutory limitations period for bringing a personal injury suit. *Id.* ¶¶ 23-24. The Court of Appeals reasoned that the purpose of the UM/UIM statute was to protect the insured from the uninsured, not the insurer from the insured, *id.* ¶ 16, stating that "[a]lthough many uninsured motorist statutes do not include a limitation period, the intent to protect the victim or the insured motorist from having to bear the total loss is obvious," *id.* ¶ 20.

**{15}** While the lengthy six-year period in this case is itself unobjectionable, it is the triggering event, the date of the accident instead of the date of the accrual of the cause of action, that concerns us. We can find no reasonable justification for a limitations period that may bar a claim before a lawful cause of action accrues. Our Legislature does not allow its own statutes of limitations to bar causes of action that have yet to accrue. *See* NMSA 1978 § 37-1-1 (1880) ("The . . . suits or actions [in this chapter] may be brought within the time hereinafter limited, respectively, *after their causes accrue*, and not afterwards, except when

5

otherwise specially provided." (emphasis added)).

**{16}**     As *Brooks* observed, "[P]rior to a violation of the insurance policy, there is no justiciable controversy upon which to sue." 2007-NMCA-033, ¶ 14. Therefore, tying the breach-of-contract cause of action against one's own insurer to the date of the accident does not serve "the rule of discovery that 'dictates that a cause of action does not accrue for purposes of calculating the limitations period until the plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim.'" *Id.* ¶ 16 (quoting *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 26, 140 N.M. 111, 140 P.3d 532).

**{17}**     Addressing the enforceability of a policy provision limiting UM/UIM claims to a period triggered by the date of the underlying accident, the Rhode Island Supreme Court recently held that "to force insureds . . . to file suit or make a written demand for arbitration before a justiciable cause of action may even exist . . . impermissibly restricts UM/UIM coverage and frustrates the public policy concerns embodied in the state's UM/UIM statute." *Am. States Ins. Co. v. LaFlam*, 69 A.3d 831, 845 (R.I. 2013).

**{18}**     It is important to distinguish between a time-to-sue provision, as in this case, and a notice provision by which insurers can require insureds to give notice of potential claims even before their full extent is known, so that the insurers "'are not forced to stand by helplessly as memories fade and physical evidence is lost,' but are 'entitled to bring declaratory judgment actions to determine coverage at their own convenience.'" *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 728, 733 (Alaska 2013) (citation omitted) (holding that "it is illogical and unreasonable to contractually require commencement of the limitations period for a UM claim before the insured has a justiciable cause of action against her insurer"). Because avoiding prejudice is the purpose of notice provisions, under our law the enforceability of a contract provision limiting when a claim for benefits under the contract can be brought by an insured depends on whether the insurer has been prejudiced by the insured's failure to comply with such a provision. *See Roberts Oil Co. v. Transamerica Ins. Co.*, 1992-NMSC-032, ¶ 25, 113 N.M. 745, 833 P.2d 222 (adopting the Alaska Supreme Court's rationale that notice clauses "should . . . be reviewed on the basis of whether their application in a particular case advances the purpose for which they were included in the policy." (citing *Estes v. Alaska Ins. Guar. Ass'n*, 774 P.2d 1315, 1318 (Alaska 1989)); *Found. Reserve Ins. Co. v. Esquibel*, 1980-NMSC-019, ¶ 15, 94 N.M. 132, 607 P.2d 1150 (holding that the insurer "must demonstrate substantial prejudice as a result of a material breach of the insurance policy by the insured before [the insurer] will be relieved of its obligations under a policy"). This standard of prejudice is also applied in the context of UM/UIM claims, indicating that if an insurer is prejudiced by an insured's late notice of a claim for UM/UIM benefits the insurer could be relieved of its obligations to provide UM/UIM coverage. *See McDonnell*, 299 P.3d at 731-32 & n.91 (applying the prejudice standard in the context of UM/UIM claims and recognizing that the New Mexico Supreme Court adopted the prejudice standard in *Roberts Oil Co.*). In this case we are not called upon to decide, and we expressly do not address, what lawful alternatives an insurer

6

may explore to minimize undesirable uncertainty and open-ended liability. As a practical matter, the lengthy delay in asserting the UIM claim in this case, resulting from a change in case law retroactively reforming insurance contracts, is unlikely to be a recurring problem for insurers. Particularly after our opinions in *Weed Warrior* and *Jordan*, there is little reason to expect that insureds will intentionally delay pursuing UM/UIM claims against their own insurers after they ascertain they will not be fully compensated for their injuries by the liability insurance coverage of the original tortfeasor.

**{19}** Addressing only the issue that is before us, we must conclude that a time-to-sue provision in a UM/UIM contract that is triggered solely by the date of an accident is unreasonable and unenforceable. In the absence of a valid contractual clause to the contrary, a suit against one's UM/UIM carrier is not barred if brought within six years after the carrier has refused to honor its UM/UIM obligations, as provided in the breach-of-contract limitations period set forth in Section 37-1-3(A). Because of our resolution of this issue, we must now address whether the policy in this case was breached. The answer to that question depends on whether the policy was subject to retroactive judicial reformation to provide UM/UIM coverage that did not appear on the face of the contract.

**B.** ***Jordan*'s Retroactive Reformation of UM/UIM Rejections Will Not Be Extended Beyond Our 2004 Decision in *Montaño***

**{20}** In 2010 this Court simultaneously issued *Jordan* and *Weed Warrior*. *Weed Warrior* reminded insurers that Section 66-5-301 requires insurers to offer UM/UIM coverage equal to the liability limits of the insurance policy and held that the choice of an insured to purchase any lower amount is a rejection of that statutory coverage. *Weed Warrior*, 2010-NMSC-050, ¶ 14. *Jordan* was the next step, requiring that insurers provide insureds with the costs of each level of UM/UIM coverage and holding that if an insurer fails to do so, the policy will be reformed to provide UM/UIM coverage equal to the limits of liability. 2010-NMSC-051, ¶ 2. This Court stated, "[W]e detail for the first time the technical requirements for a valid rejection of UM/UIM coverage in an amount equal to liability limits." *Id.* ¶ 25. If insurers do not offer UM/UIM coverage equal to the liability limits of the policy as required by *Weed Warrior* or if insurers fail to obtain a valid rejection before excluding any part or all of UM/UIM coverage from the policy, "the policy will be reformed to provide UM/UIM coverage equal to the liability limits." *Jordan*, 2010-NMSC-051, ¶ 22.

**{21}** In *Jordan*, we were not asked to determine how far back into history insurers must go in reforming their old contracts. This case requires us to do so. We agree with Amici for the insurance industry that it would be unfair to apply *Jordan* retroactively to policies issued before this Court's May 20, 2004, opinion in *Montaño*, holding for the first time that insurers were expected to be aware of rejection requirements regarding UM/UIM coverage, but making its application prospective only.

**{22}** A holding on a civil matter is generally presumed to apply retroactively. *See Beavers v. Johnson Controls World Servs., Inc.*, 1994-NMSC-094, ¶ 22, 118 N.M. 391, 881 P.2d

1376. Whether the presumption of retroactive application has been overcome depends on three factors:

> *First*, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.
>
> *Second*, it has been stressed that we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further . . . its operation.
>
> *Finally*, we have weighed the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

*Id.* ¶ 23 (first omission in original) (internal quotation marks and citation omitted).

**{23}** Pursuant to *Beavers*, this Court in *Jordan* applied its ruling retroactively. *See Jordan*, 2010-NMSC-051, ¶¶ 25-29. The first factor did not prevent retroactive application because we concluded that *Jordan*'s holding was based on "settled principles articulated in twenty years of UM/UIM jurisprudence." *See id.* ¶ 27 (citing *Montaño*, 2004-NMSC-020, ¶ 20, and *Romero*, 1990-NMSC-111, ¶ 9). The second factor weighed in favor of retroactivity because the purpose of Section 66-5-301 was to afford the statutory right to "either obtain UM/UIM insurance coverage equal to the liability limits of the policy or to make a knowing and intelligent rejection of part or all of that coverage," and that retroactive application will provide meaningful enforcement of the requirements of the relevant statutes and insurance regulations. *See Jordan*, 2010-NMSC-051, ¶ 28. And third, the equities favored retroactivity: "On balance, we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's intended beneficiaries." *Id.* ¶ 29.

**{24}** This Court has issued a number of opinions setting forth the procedures required for a proper rejection of UM/UIM coverage, ensuring that such a rejection is knowing and intelligent. First, we held that "unless the named insured rejects such coverage in a manner consistent with the requirements imposed by the [applicable regulations], uninsured motorist coverage will be read into the insured's automobile liability insurance policy regardless of the intent of the parties or the fact that a premium has not been paid." *Romero*, 1990-NMSC-111, ¶ 1. Accordingly in *Romero*, UM/UIM coverage was "read into" the insurance policy "'notwithstanding the language of the policy.'" *Id.* ¶ 13 (quoting *Roger v. Estate of Moulton*, 513 So. 2d 1126, 1131 (La. 1987).

8

**{25}** Fourteen years after *Romero*, this Court created a new rejection requirement in *Montaño*, charting what we called "a new course" by judicially imposing a requirement not spelled out in insurance regulations, that insurers disclose the premium costs for each available level of stacked coverage as a means of guaranteeing that consumers can knowingly exercise their statutory rights to UM/UIM coverage. *See Montaño*, 2004-NMSC-020, ¶¶ 17, 20. *Jordan* followed *Montaño* by requiring similar premium disclosure as to "the premium charges corresponding to each available option" of UM/UIM coverage. *Jordan*, 2010-NMSC-051, ¶ 2; *see also id.* ¶ 24 (comparing the UM/UIM prescription to *Montaño*: "Likewise, by including premium prices for each available UM/UIM coverage level, insurance carriers meaningfully enable consumers to make a knowing and intelligent purchase or rejection of UM/UIM coverage."). *Jordan* explicitly relied on *Montaño* for its holding. *See Jordan*, 2010-NMSC-051, ¶ 27.

**{26}** Although *Jordan* did not expressly set a temporal limit to its retroactivity ruling, it indicated that retroactivity applied only because *Montaño* had in 2004 alerted insurers to the premium disclosure requirement. In *Montaño*, we refused to retroactively apply the premium disclosure requirement for provisions regarding stacking, recognizing that its premium disclosure requirement was "a new, and not easily foreshadowed, aspect to our jurisprudence on stacking and that it would be inequitable to apply it against [an insurer] before it has had an opportunity to alter its policy language." 2004-NMSC-020, ¶ 22. It would be contradictory for us to now hold that under the first *Beavers* factor *Jordan*'s premium disclosure requirement was somehow foreseeable prior to *Montaño*. *Montaño* is an appropriate outer bound for the retroactivity of *Jordan*'s holding because insurers could not have anticipated the premium disclosure requirement until *Montaño*.

**{27}** Until *Montaño*, no statute or regulation suggested that premium disclosure was required for a UM/UIM rejection to be effective. As we stated in *Jordan*, "Section 66-5-301 does not expressly specify the form or manner that a rejection must take in order to be effective." *Jordan*, 2010-NMSC-051, ¶ 16. Nor did the only administrative regulation relevant to rejection, 13.12.3.9 NMAC, hint at a premium disclosure requirement; it only required that the rejection be in writing and that it be made part of the policy. *Jordan*, 2010-NMSC-051, ¶ 18. Rather, in *Jordan* we read Section 66-5-301 to "give each insured the right to reject [UM/UIM] coverage in its entirety or a portion of the maximum coverage to which an insured is entitled," *Jordan*, 2010-NMSC-051, ¶ 27, and we imposed the premium disclosure requirement in the UM/UIM context because "insurers continue to offer UM/UIM coverage in ways that are not conducive to allowing the insured to make a realistically informed choice," *id.* ¶ 20. *Jordan*'s retroactivity relied on the "new direction" set in *Montaño*, 2004-NMSC-020, ¶ 1, to further the legislative intent of ensuring that an insured's rejections of the authorized coverage are knowing and intelligent. *Jordan*, 2010-NMSC-051, ¶¶ 18, 24. Only *Montaño* and nothing earlier can support *Jordan*'s retroactivity.

**{28}** Prior to *Montaño*, no case could have signaled insurers that premium disclosure was required for a UM/UIM rejection to be effective. *Romero* did not impose a premium disclosure requirement. *Romero* merely required insurers to abide by the administrative

9

regulation prescribing that the rejection be written and attached to the insurance policy; and *Romero* "read [coverage] into the . . . insurance policy" if the insurer violated the regulation. 1990-NMSC-111, ¶¶ 1-4. *Romero* cannot serve as *Jordan*'s outer bound because *Romero* did not impose new rejection requirements but rather imposed UM/UIM coverage where the existing regulatory requirements were violated. *Romero*, 1990-NMSC-111, ¶ 8 ("An insured may reject uninsured motorist coverage, but the rejection must satisfy the regulations promulgated by the superintendent of insurance."). *Montaño* imposed rejection requirements judicially for the first time, which was why this Court explicitly rejected retroactivity. 2004-NMSC-020, ¶ 22 ("[W]e choose to give [our holding] a purely prospective application."). We therefore hold that *Jordan*'s retroactive reformation requirements should not be imposed on policies issued before May 20, 2004, when *Montaño* was issued. Because Plaintiff's policy was issued before that date, its facial rejection of UM/UIM coverage should be enforced.

## III.   CONCLUSION

**{29}**    We reverse and remand to the district court for entry of a judgment consistent with this opinion.

**{30}    IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**NAN G. NASH, Judge,
sitting by designation**