The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:

Filing Date: June 30, 2025

**NO. S-1-SC-39256**

**JARED KILEEN,**

  Plaintiff-Petitioner,

v.

**TAMBERIN DIDIO, FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY, and PROGRESSIVE DIRECT INSURANCE COMPANY,**

  Defendants-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Denise Barela-Shepherd, District Judge**

The Law Office of Brian K. Branch
Brian K. Branch
Albuquerque, NM

Davis Kelin Law Firm, LLC
Ben Davis
Albuquerque, NM

for Petitioner

Allen Law Firm, LLC
Meena H. Allen
Kerri L. Allensworth
Albuquerque, NM

for Respondent Progressive Direct Insurance Company

**OPINION**

**VARGAS, Justice.**

{1}     We have been asked, once again, to consider the parameters of New Mexico's uninsured/underinsured motorist (UM/UIM) statute, NMSA 1978, § 66-5-301 (1983), which we are required to interpret in a manner that effectuates the clear remedial purpose set forth by the Legislature: to encourage New Mexicans to purchase UM/UIM insurance. As a matter of first impression, the question before us is whether UM/UIM insurance must be offered on a per-vehicle basis. Recently, in *Ullman v. Safeway Ins. Co.*, 2023-NMSC-030, ¶ 77, 539 P.3d 668, we explained that our precedent had not yet addressed or established such a requirement. And, although this question was raised in *Ullman*, we declined to answer it because the issue was not sufficiently developed and, therefore, it was not squarely before us. *Id.* ¶¶ 25, 77. Today, after careful consideration, we answer that question in the affirmative. Insurers must offer UM/UIM coverage on a per-vehicle basis and disclose premiums accordingly. Our holding applies with selective prospectivity.

**I.     BACKGROUND**

{2}     Plaintiff Jared Kileen's father purchased automotive liability insurance for three vehicles from Defendant Progressive Direct Insurance Company

(Progressive).[1] The Progressive policy Kileen purchased (the Policy) provided combined liability limits in the amount of $500,000 per accident. It is undisputed that Kileen rejected UM/UIM coverage when he purchased the Policy by signing and returning a selection/rejection form indicating rejection.

{3}    After Kileen purchased the Policy, he was involved in an accident. Kileen suffered serious injuries and related damages allegedly in excess of Defendant Tamberin Didio's coverage limits. As a result, Kileen filed a claim with his own insurance company, Progressive, for UIM coverage. Progressive denied the claim, relying on Kileen's rejection of UM/UIM coverage.

{4}    Kileen filed suit against Progressive and others in district court. Kileen settled all claims with respect to each Defendant except for Progressive. Kileen and Progressive filed competing motions for summary judgment addressing whether Progressive's offer was valid given that UM/UIM coverage was not offered on a per-

---

[1]In the suit underlying this appeal, Progressive contends that Kileen is not covered under his father's policy. We do not opine upon whether Kileen is covered under his father's policy as it is not before us. For clarity, we refer to the purchase of coverage and related actions with respect to the Policy without distinguishing between Kileen and his father, instead referring collectively to such actions as carried out by Kileen because the distinction has no legal significance to the question before us (hereinafter, Kileen).

vehicle basis. The district court summarily granted Progressive's motion for summary judgment, dismissing Kileen's claims against Progressive with prejudice.

{5}     The Court of Appeals affirmed the district court in a memorandum opinion. *Kileen v. Didio*, A-1-CA-39384, mem. op. ¶ 1 (N.M. Ct. App. Feb. 7, 2022) (nonprecedential). It explained that *Lueras v. GEICO General Insurance Co.*, 2018-NMCA-051, 424 P.3d 665, *aff'd in part, rev'd in part sub nom. Ullman*, 2023-NMSC-030, controlled because *Lueras* addressed the same coverage structure at issue here—an offer of UM/UIM coverage on a per-vehicle basis. *Kileen*, A-1-CA-39384, mem. op. ¶¶ 3-4. The Court of Appeals in *Lueras* rejected the argument that *Montaño v. Allstate Indemnity Co.*, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255—standing alone—required such a structure of coverage, concluding that the per-policy offer of UM/UIM coverage in that case did not offend New Mexico law. *Lueras*, 2018-NMCA-051, ¶ 18. The plaintiffs in *Lueras* did not argue, and, therefore, the Court of Appeals did not consider, whether the clear legislative purpose of encouraging consumers to purchase UM/UIM insurance supported the imposition of a requirement that insurers offer UM/UIM coverage on a per-vehicle basis. *See generally id.*; *see also Ullman*, 2023-NMSC-030, ¶ 77.

{6}     At the time the Court of Appeals issued its decision in *Kileen*, *Lueras* was on appeal before this Court. We consolidated the *Lueras* appeal with *Ullman*. However,

the discrete question of whether UM/UIM coverage must be offered on a per-vehicle basis to give effect to the purpose of the UM/UIM statute was not sufficiently developed, and we ultimately resolved the *Lueras* appeal on other grounds. *See Ullman*, 2023-NMSC-030, ¶ 51 (concluding that the insurer's failure to explain stacking in its offer rendered the rejection invalid); *id.* ¶ 77 (explaining that the per-vehicle offer of coverage argument was not sufficiently developed).

{7} Following *Ullman*, we granted Kileen's petition for certiorari in this case on the following question: "Whether insurers are required to provide UM/UIM coverage for each motor vehicle insured unless the insured makes a valid written rejection of such coverage on a per-vehicle basis."

## II. DISCUSSION

{8} On appeal, Kileen contends that longstanding public policy as well as the plain language of the UM/UIM statute itself support the imposition of a requirement that insurers offer UM/UIM coverage on a per-vehicle basis.

## A. Standard of Review

{9} "We review claims requiring the interpretation of insurance policy language de novo." *Ullman*, 2023-NMSC-030, ¶ 26. Interpretation of New Mexico's UM/UIM statute "in order to determine the form and manner that offers and rejections of UM/UIM coverage must take" is a question of law that is likewise

subject to de novo review. *Id.* (text only)[2] (citation omitted). Finally, we review "a district court's grant of summary judgment" de novo. *Id.* (citation omitted).

**B.      Statutory Text Alone Does Not Resolve the Question Before Us**

{10}      Section 66-5-301 governs UM/UIM coverage in New Mexico. Subsections 66-5-301(A) and (B), collectively, require an insurer to offer UM/UIM coverage "in minimum limits . . . and such higher limits as may be desired by the insured, but up to the limits of liability." *See also Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 15, 149 N.M. 157, 245 P.3d 1209 (holding that Section 66-5-301 "requires an insurer to offer UM/UIM coverage in an amount equal to the liability limits of the policy"). Subsection 66-5-301(C) provides an insured the right to reject UM/UIM coverage. However, neither Section 66-5-301 nor its implementing regulations promulgated by the superintendent of insurance provide any clear indication of the manner in which UM/UIM coverage must be offered. *See* § 66-5-301(A) (identifying the superintendent of insurance as the implementing authority); *see generally* 13.12.3 NMAC (7/1/1997 as amended through 5/14/2004) (providing coverage requirements generally without identifying whether UM/UIM

---

[2]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

coverage shall be offered per-vehicle or per-policy). Indeed, the plain language of the statute is devoid of any guidance explaining whether the Legislature intended for UM/UIM coverage to be offered on a per-vehicle or per-policy basis.

{11} Because the Legislature has never clarified whether its statutorily mandated offer of UM/UIM coverage must be offered on a per-vehicle, per-policy, or other legislatively mandated basis, we must rely upon the statute's legislative purpose to inform our decision. This is not uncommon. For instance, most recently in *Ullman*, we explained that, "because the text of Section 66-5-301 has often provided insufficient guidance in answering the questions that come before us, the imperative to further the statute's legislative purpose has directed our UM/UIM decisions." 2023-NMSC-030, ¶ 42; *accord Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 16, 147 N.M. 678, 228 P.3d 462 ("Section 66-5-301 does not explicitly address the *manner* in which [an] offer or rejection of UM/UIM coverage must take place."). We reiterate that the Legislature may always clarify its purpose through statutory amendment. *See, e.g.*, *State v. Sims*, 2010-NMSC-027, ¶ 34, 148 N.M. 330, 236 P.3d 642 ("If the Legislature intends otherwise, it is free to amend the statute to make clear its purpose.").

**C.** **The Remedial Purpose of the UM/UIM Statute and Public Policy Necessitate the Adoption of a Per-Vehicle Requirement**

{12} Because "we presume that the Legislature intends the application of the words it uses," *Weed Warrior Servs.*, 2010-NMSC-050, ¶ 11, our "primary goal when interpreting statutes is to further legislative intent," *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 15, 149 N.M. 162, 245 P.3d 1214 (citation omitted). The purpose of the statutory requirement that UM/UIM be offered to consumers in New Mexico is "to encourage insureds to purchase such coverage." *Montaño*, 2004-NMSC-020, ¶ 16; *see also Weed Warrior Servs.*, 2010-NMSC-050, ¶ 12 ("The requirement that UM/UIM coverage be offered by insurers is to encourage insureds to purchase such coverage." (text only) (citation omitted)). Indeed, since at least 1975, "we have . . . interpreted the uninsured motorist statute liberally 'to implement [the] purpose of compensating those injured through no fault of their own.'" *Ullman*, 2023-NMSC-030, ¶ 31 (alteration in original) (quoting *Chavez v. State Farm Mut. Auto. Ins. Co.*, 1975-NMSC-011, ¶ 9, 87 N.M. 327, 533 P.2d 100). We have consistently recognized that this liberal interpretation is a "qualitatively different analysis than we use when construing many other types of statutes and insurance policies." *Jordan*, 2010-NMSC-051, ¶ 15 (internal quotation marks and citation omitted). In light of the remedial nature of New Mexico's UM/UIM statute, we reaffirm that "the statute is interpreted liberally to implement that remedial purpose, and any exception will be

strictly construed." *Marckstadt*, 2010-NMSC-001, ¶ 14 (text only) (citation omitted).

{13} Guided by the clear purpose of the statute, our case law has "sought to advance the legislative purpose of encouraging the purchase of [UM/UIM] coverage among New Mexico motorists" when we have been called upon to "set[] out the requirements for valid offers and rejections of UM/UIM insurance." *Ullman*, 2023-NMSC-030, ¶ 33; *accord Jordan*, 2010-NMSC-051, ¶ 15 ("In a consistent line of cases, this Court has liberally interpreted Section 66-5-301 and its implementing regulation . . . for their remedial purposes.").

{14} For instance, most recently in *Ullman*, we held that "offers of UM/UIM insurance . . . must include a brief discussion of stacking." *Ullman*, 2023-NMSC-030, ¶ 43. We explained that, "[b]y providing material information about the benefits an insured may actually receive when purchasing UM/UIM coverage on multiple vehicles, an explanation of stacking may encourage some consumers to purchase UM/UIM insurance where they might otherwise demur, advancing the legislative purpose of Section 66-5-301." *Id.* ¶ 41. Under our approach, we emphasized providing consumers with "information about the costs and benefits of offered coverages," such that those who want a particular form of coverage "'pay for it, and

those who don't want it don't pay for it.'" *Id.* (quoting *Montaño*, 2004-NMSC-020, ¶ 18).

{15} Likewise, in *Jordan*, we held that a rejection of UM/UIM coverage "must be made in writing and must be made a part of the insurance policy that is delivered to the insured." 2010-NMSC-051, ¶ 2. To honor such requirements, we directed insurers to provide "the insured with the premium charges corresponding to each available option for UM/UIM coverage so that the insured can make a knowing and intelligent decision to receive or reject the full amount of coverage to which the insured is statutorily entitled." *Id.* We grounded our holding in an attempt to balance the public policy "interests in permitting private contractual relations between the parties, and honoring the broad intent of the UM/UIM statute." *Id.* ¶ 23 (text only) (citation omitted). We reasoned that providing consumers with such additional information would "enable consumers to make a knowing and intelligent purchase or rejection of UM/UIM coverage." *Id.* ¶ 24. These same requirements "actually enhance[] freedom of contract because insureds' expectations will be met and they will get exactly what they consciously choose to pay for." *Id.* (citation omitted).

{16} Our approach in *Jordan* of examining pertinent policy considerations while remaining faithful to the purpose of the UM/UIM statute was drawn in large part from *Montaño* where we identified a number of policy considerations to support our

holding requiring an insurance company to obtain a written rejection of stacked coverage. *See, e.g.*, *Jordan*, 2010-NMSC-051, ¶¶ 23-24, 27 (relying upon *Montaño*); *Montaño*, 2004-NMSC-020, ¶ 1 (identifying policy considerations). Those policy considerations are particularly relevant here. For example, we explained in *Montaño* that it might frustrate, rather than further the purpose of the UM/UIM statute if we were to "requir[e] stacking in all cases on a take-it-or-leave-it basis" because such a requirement "would reduce the freedom of the parties to contract for less coverage and thus their freedom to decide how much coverage they can afford." 2004-NMSC-020, ¶ 16. Such a requirement would also "put the insured who owns multiple vehicles in the position of paying for all of the coverages or rejecting UM coverage altogether, rather than deciding how much coverage they can afford. This could result in some lower-income insureds who own multiple vehicles being effectively 'priced out' of UM coverage." *Id.*

{17}     The same reasoning informs our decision today; resolution of this issue requires us to align, or at the very least balance, the policy considerations previously identified in case law with our obligation to honor the legislative purpose of encouraging New Mexicans to purchase UM/UIM insurance. *See Ullman*, 2023-NMSC-030, ¶ 33. After careful consideration, we hold that the clear remedial purpose of New Mexico's UM/UIM statute and public policy require that insurers

offer UM/UIM coverage on a per-vehicle basis. *See Jordan*, 2010-NMSC-051, ¶ 15 ("This Court's primary goal when interpreting statutes is to further legislative intent." (citation omitted)). While this is not the first time we have judicially imposed a requirement to effectuate the clear remedial purpose set forth by the Legislature, we nevertheless do not impose such a requirement lightly. *See Whelan v. State Farm Mut. Auto. Ins. Co.*, 2014-NMSC-021, ¶¶ 24-25, 329 P.3d 646 (explaining that in *Montaño*, we "judicially impos[ed] a requirement not spelled out" by law to further legislative intent); *accord Marckstadt*, 2010-NMSC-001, ¶ 16 (holding that an insurer must obtain a written rejection of UM/UIM coverage from the insured in furtherance of the purpose of our UM/UIM statute even though such a requirement "does not appear on the face of the statute"). By offering such coverage on a per-vehicle basis, consumers will have the option of purchasing the coverage they can afford rather than purchasing UM/UIM coverage on *all* vehicles on a multi-vehicle policy or rejecting coverage in its entirety. This advances the purpose of Section 66-5-301 by encouraging a number of "consumers to purchase UM/UIM insurance where they might otherwise demur," *Ullman*, 2023-NMSC-030, ¶ 41, and assures that consumers are informed in a meaningful way before accepting or rejecting coverage. *See Marckstadt*, 2010-NMSC-001, ¶ 16 ("[I]n order for the offer and rejection requirements of Section 66-5-301 to effectuate the policy of expanding

UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly and intelligently act* to reject it before it can be excluded from a policy." (citation omitted)).

{18} Our holding likewise furthers freedom of contract because consumers who select or reject UM/UIM coverage on a per-vehicle basis will receive precisely "what they consciously choose to pay for," and insurers, having received selection/rejection information for each vehicle, will have a clear understanding of insureds' expectations and associated risks. *Jordan*, 2010-NMSC-051, ¶ 24 (citation omitted) (holding that it enhances freedom of contract to require insurers to provide "a list of coverage options with corresponding costs . . . because insureds' expectations will be met and they will get exactly what they consciously choose to pay for. Insurers benefit because they will not face the risk of providing coverage for which they are not compensated" (citation omitted)). Though honoring the Legislature's decision to require insurers to offer UM/UIM coverage has become a vexing aspect of UM/UIM jurisprudence, the modest expansion we announce today arises out of the same concern that permeates our case law: "insurers continue to offer UM/UIM coverage in ways that are not conducive to allowing the insured to make a realistically informed choice," which frustrates the legislative purpose of encouraging the purchase of UM/UIM insurance. *Id.* ¶ 20. When coverage is offered

on a per-vehicle basis and premiums are disclosed accordingly, consumers receive the information and options necessary to select the coverage they can afford. As a result, those who want a particular form of coverage "'pay for it, and those who don't want it don't pay for it.'" *Ullman*, 2023-NMSC-030, ¶ 41 (quoting *Montaño*, 2004-NMSC-020, ¶ 18); *see also Montaño*, 2004-NMSC-020, ¶ 16 (emphasizing that freedom of contract supports allowing consumers to decide the coverage they can afford).

{19} By contrast, when an offer of UM/UIM insurance is offered per-policy on an all-or-nothing basis, the insured simply is not given the option to pay only for the coverage they want or, perhaps, they can afford. Instead, all-or-nothing offers place the insured in an unfavorable position of purchasing UM/UIM coverage on *all* vehicles on a multi-vehicle policy *or* rejecting UM/UIM coverage in its entirety. This type of offer—sometimes referred to as a take-it-or-leave-it offer—does not align with freedom of contract principles as the insured never receives the option to select a coverage option that best suits their needs. *Jordan*, 2010-NMSC-051, ¶ 24 (concluding that requiring disclosure of the price of coverage for each level of UM/UIM coverage "meaningfully enable[s] consumers to make a knowing and intelligent purchase or rejection of UM/UIM coverage"). More importantly, a per-policy offer does not align with the purpose of the statute to encourage the purchase

of UM/UIM coverage. As we have previously explained in the context of stacking, a take-it-or-leave-it, per-policy offer has the potential to "frustrate, rather than advance," the clear purpose of our UM/UIM statute because it places "the insured who owns multiple vehicles in the position of paying for all of the coverages or rejecting UM coverage altogether, rather than deciding how much coverage they can afford." *Montaño*, 2004-NMSC-020, ¶ 16. The result of such an offer is that "some lower-income insureds who own multiple vehicles [become] effectively 'priced out' of UM coverage." *Id.*

{20} Progressive suggests that the imposition of a per-vehicle requirement would result in confusion or the burdensome imposition of an "infinite number of choices" offered to consumers. We do not impose such an expansive requirement. Rather, under our holding today, insurers must offer UM/UIM coverage per vehicle and disclose premiums accordingly. The latter requirement is not a new feature of our case law. *Montaño* was the first to mandate a premium disclosure, requiring "that insurers disclose the premium costs for each available level of stacked coverage as a means of guaranteeing that consumers can knowingly exercise their statutory rights to UM/UIM coverage." *Whelan*, 2014-NMSC-021, ¶ 25 (citing *Montaño*, 2004-NMSC-020, ¶¶ 17, 20). This requirement was later incorporated in the *Jordan*

factors for a valid waiver of UM/UIM coverage. *Id.*; *Jordan*, 2010-NMSC-051, ¶ 22.

{21} Progressive further argues there is no requirement that it disclose every coverage permutation, including those that are not offered under the policy. We agree. An insurer need not disclose every permutation imaginable. But our Legislature plainly requires an insurer to offer UM/UIM coverage, *see* § 66-5-301(A)-(B), and under our ruling today, insurers must offer coverage on a per-vehicle basis. To the extent Progressive views our holding as requiring an infinite number of coverage options—irrespective of whether they are offered under the policy—it misunderstands our holding.

{22} Finally, Progressive contended at oral argument that, although it would not sell UM/UIM coverage on a per-vehicle basis even if a consumer requested it, it could provide similar coverage through a per-policy offer. Although we have explained why a per-vehicle offer is required to satisfy the intent of the UM/UIM statute, we further clarify in accordance with freedom of contract that, as long as the insured receives a meaningful offer to reject or select coverage on each vehicle, Progressive may continue to offer UM/UIM per-policy coverage as an additional permutation of coverage, if it so chooses. In other words, to satisfy the intent of the

statute, the per-policy structure of coverage may only be offered in addition to, and not in lieu of, the per-vehicle offer we require today.

**D.  Our Holding Does Not Alter the Rule That UM/UIM Coverage Follows the Insured**

{23}  The parties also disagree with how a per-vehicle requirement interacts with the rule that UM/UIM coverage follows the insured. Unlike liability insurance, UM/UIM personal injury coverage in New Mexico does not follow the vehicle, but instead follows the insured, insuring against bodily injury, even while a pedestrian or a passenger in someone else's vehicle. *See Lopez v. Found. Rsrv. Ins. Co., Inc.*, 1982-NMSC-034, ¶ 8, 98 N.M. 166, 646 P.2d 1230 (identifying circumstances where a consumer has UM/UIM coverage), *holding modified on other grounds by Montaño*, 2004-NMSC-020, ¶ 1; *see also Montaño*, 2004-NMSC-020, ¶ 9 (stating that UM coverage follows the insured rather than the vehicle). In holding that insurers must offer UM/UIM coverage on a per-vehicle basis, we clarify that we do not upset or otherwise alter the longstanding rule that UM/UIM coverage follows the insured.

{24}  Accordingly, when an insured selects UM/UIM coverage on one or more vehicles through the per-vehicle offer we require today, they will be entitled to benefits in the event of a covered loss—including as a pedestrian or passenger in someone else's vehicle. However, when an insured is operating a vehicle in which

they rejected UM/UIM coverage on a multi-vehicle policy, there is no coverage to "follow" the insured. The insured has plainly rejected coverage for such a circumstance and, therefore, cannot reasonably expect UM/UIM coverage in the event of an accident in that particular vehicle. *See Ullman*, 2023-NMSC-030, ¶ 31 (explaining that we interpret the UM/UIM statute liberally to "ensure that the insured's reasonable expectations are met and that an insured gets what he or she pays for and no more" (text only) (citation omitted)).

{25} In this way, a consumer's rejection of coverage does not fundamentally alter the relationship between the insurance benefits and the consumer; it acts as an explicit exclusion or limitation under the policy, consistent with our case law. *See, e.g.*, *Vigil v. Cal. Cas. Ins. Co.*, 1991-NMSC-050, ¶ 12, 112 N.M. 67, 811 P.2d 565 ("[U]ninsured motorist coverage (. . . *subject to any explicit policy limitations or exclusions*), applies if at the time of the accident the insured was occupying the automobile described in his policy or was on foot, or on horseback, or while sitting in his rocking chair on his front porch or while occupying a non-owned automobile." (emphasis added) (brackets, internal quotation marks, and citation omitted)); *Rodriguez v. Windsor Ins. Co.*, 1994-NMSC-075, ¶ 18, 118 N.M. 127, 879 P.2d 759 ("Unless the policy explicitly provides otherwise, there is no particular relationship between the insurance benefits available to the insured and the automobile or other

vehicle involved in the accident." (text only) (citation omitted)), *holding modified on other grounds by Montaño*, 2004-NMSC-020, ¶ 1. To conclude otherwise would result in a windfall for an insured who plainly rejects coverage and yet receives more than what was paid for. *See Ullman*, 2023-NMSC-030, ¶ 31. Instead, the principle we announce today is one of balance. Our holding advances the purpose of the statute to encourage New Mexicans to purchase UM/UIM coverage because (1) consumers are informed in a meaningful way before accepting or rejecting coverage, (2) consumers receive the coverage they consciously select, in furtherance of freedom of contract, and (3) per-vehicle offers provide coverage options for more classes of consumers. *See Marckstadt*, 2010-NMSC-001, ¶ 16 (explaining that a meaningful offer of UM/UIM coverage is required for a valid rejection); *Montaño*, 2004-NMSC-020, ¶ 16 (explaining that it is contrary to the purpose of the UM/UIM statute to restrict or prevent "the freedom of the parties to contract for less coverage and thus their freedom to decide how much coverage they can afford"). By the same token, insurers benefit because they have a better understanding of insureds' expectations, which in turn mitigates "the risk of providing coverage for which they are not compensated." *Jordan*, 2010-NMSC-051, ¶ 24.

**E.      Our Holding Applies With Selective Prospectivity**

{26}      Having concluded that UM/UIM coverage must be offered per vehicle and clarified how our holding interacts with the rule that UM/UIM coverage follows the insured, we must consider whether our holding applies retroactively or prospectively. *See, e.g.*, *Ullman*, 2023-NMSC-030, ¶ 44. "It is within the inherent power of a state's highest court to give a decision prospective or retrospective application without offending constitutional principles." *Id.* (text only) (citation omitted). There is a presumption of retroactivity when we adopt a new rule in a civil case. *Id.* Such a presumption, however, "may be overcome by a sufficiently weighty combination of several factors: (1) whether the decision to be applied prospectively establishes a new principle of law, (2) whether retroactive operation will advance or inhibit the operation of the new rule, and (3) whether retroactive application may produce substantial inequitable results." *Id.* (text only) (citation omitted).

{27}      With respect to the first factor, Kileen asserts that retroactive application is fitting under *Montaño* because it is not new law to require UM/UIM coverage on a per-vehicle basis. Kileen's assertion is belied by our recent explanation in *Ullman* that "*Montaño* established no such [per-vehicle] requirement." 2023-NMSC-030, ¶ 76 (citation omitted). Because we recently explained that our case law did not require insurers to offer UM/UIM coverage on a per-vehicle basis for a multi-vehicle policy,

which aligns with Progressive's position today, it can hardly be said that Progressive's reading of our precedent was unreasonable. *Id.* ¶ 47 (explaining that insurers were not unreasonable in relying upon case law concluding that an explanation of stacking was not required); *see also Beavers v. Johnson Controls World Servs., Inc.*, 1994-NMSC-094, ¶ 27, 118 N.M. 391, 881 P.2d 1376 ("The extent to which the parties in a lawsuit, or others, may have relied on the state of the law before a law-changing decision has been issued can hardly be overemphasized."). Indeed, "one of the cherished, fundamental principles of this nation's jurisprudence is that persons are at least entitled to know in advance what consequences adhere to their actions." *Beavers*, 1994-NMSC-094, ¶ 38 (text only). In light of Progressive's reasonable reliance upon our prior decisions, we conclude the first factor weighs in favor of prospective application.

{28} Under the second factor, we consider whether retroactive application will advance the new rule. In *Ullman*, we explained that retroactive application did not advance the purpose of the new rule in that case—requiring a stacking disclosure aimed at providing insureds with sufficient information to make an informed decision—because any insureds who would be receiving the information would have already suffered a loss. 2023-NMSC-030, ¶ 48. On the other hand, we noted, retroactive application would "serve a compensatory purpose, and accordingly

provide meaningful enforcement of the requirements of Section 66-5-301 ensuring that every insured has been afforded his or her statutory right to either obtain UM/UIM insurance . . . or to make a knowing and intelligent rejection of part or all of that coverage." *Id.* (ellipsis, internal quotation marks and citation omitted). In balancing such competing considerations, we concluded the second factor weighed neutrally. We reach the same conclusion here. While retroactive application would certainly serve a compensatory purpose and provide enforcement of the UM/UIM statute, we simply have no way of knowing whether an insured who has already suffered a loss would have purchased coverage if it were offered on a per-vehicle basis. Absent such information, it cannot be said whether retroactive application of our holding would further the purpose of the statute—to encourage consumers to purchase UM/UIM insurance.

{29}    Finally, we must address whether retroactive application of our holding would result in inequity. Put simply, it would be inequitable to expect Progressive to have complied with a rule that did not yet exist. *See id.* ¶¶ 49, 76-77 (explaining that it would be inequitable to apply a requirement to an insurer before it has an opportunity to ensure compliance, and noting that our precedent had not required insurers to offer UM/UIM coverage on a per-vehicle basis). While we agree with Kileen that the "all-or-nothing" offer of coverage was disfavored over twenty years ago in *Montaño*,

2004-NMSC-020, ¶¶ 16, 19-20, we have also explained that *Montaño* only addressed requirements necessary for an insurer to preclude stacking of coverage in a multi-vehicle policy, *Ullman*, 2023-NMSC-030, ¶ 76. Therefore, even though we conclude the policy considerations expressed in *Montaño* have equal force here, it was not easily foreshadowed that we would require insurers to offer coverage on a per-vehicle basis. *See Ullman*, 2023-NMSC-030, ¶ 47. We give this substantial weight in considering whether the presumption of retroactivity is overcome because "[t]he reliance interest to be protected by a holding of nonretroactivity is strongest in commercial settings, in which rules of contract and property law may underlie the negotiations between or among parties to a transaction." *Beavers*, 1994-NMSC-094, ¶ 28. We conclude the third factor weighs in favor of prospective application.

{30} In considering the combination of such factors, we conclude the presumption of retroactivity is overcome. However, to apply our holding with pure prospectivity—that is, in such a manner that it would not apply to the litigants before us—would be an anomaly in New Mexico. *Id.* ¶ 18 n.7 (defining the various types of prospectivity, and noting that "[p]ure prospectivity is rare" in our jurisprudence); *accord Ullman*, 2023-NMSC-030, ¶ 50 ("[P]ure prospectivity . . . is rarely appropriate."). "Instead, we have repeatedly held that certain decisions would be given 'selective' or 'modified' prospective effect, applying to the litigants in the case

giving rise to the new rule and thereafter only to parties whose conduct occurs after the announcement." *Id.* (text only) (citation omitted). We reach the same conclusion here. Our holding applies with selective prospectivity because the briefs, argument, and appellate process initiated by the parties have "afforded us the opportunity to change an outmoded . . . rule of law" that did not further the remedial purpose set forth by our Legislature. *Id.* (internal quotation marks and citation omitted). We therefore apply our holding to the parties before us.

**F.     Progressive's Per-Policy Offer of UM/UIM Coverage Is Contrary to the Purpose of the Statute and to Public Policy**

{31}     Progressive does not dispute that it offered Kileen UM/UIM coverage on a per-policy, rather than a per-vehicle basis. Because Progressive did not offer UM/UIM coverage on a per-vehicle basis or disclose premiums accordingly, Kileen was never afforded a meaningful opportunity to accept or reject such coverage. Kileen's rejection of coverage, as a result, is void because it was not knowingly and intelligently made. *See Marckstadt*, 2010-NMSC-001, ¶ 16 ("[I]n order for the offer and rejection requirements of Section 66-5-301 to effectuate the policy of expanding UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly and intelligently act* to reject it before it can be excluded from a policy." (citation omitted)); *accord Jordan*, 2010-NMSC-051, ¶ 18. We therefore reverse the district court's grant of summary judgment.

## III.  CONCLUSION

{32}  We remand this matter to the district court for further proceedings consistent with this opinion.

{33}  **IT IS SO ORDERED.**

_____
**JULIE J. VARGAS, Justice**

**WE CONCUR:**


_____
**DAVID K. THOMSON, Chief Justice**


_____
**MICHAEL E. VIGIL, Justice**


_____
**C. SHANNON BACON, Justice**


_____
**BRIANA H. ZAMORA, Justice**